# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| THOMAS BELANCIO, | |
| *Plaintiff,* | |
| vs. | Case No. 17-1180-EFM |
| KANSAS DEPARTMENT OF HEALTH AND ENVIRONMENT, JEFF ANDERSON, Secretary of the Kansas Department of Health and Environment, in his official capacity, JONATHAN HAMDORF, Director of the Division of Health Care Finance, in his official capacity, MARY ELLEN O'BRIEN WRIGHT, Senior Manager of WORK, in her official capacity, and SHERRI MARNEY, WORK Program Manager, in her official capacity. | |
| *Defendants.* | |

## MEMORANDUM AND ORDER

This case arises out of the Kansas Department of Health and Environment's ("KDHE") denial of benefits to Plaintiff Thomas Belancio under the Kansas WORK program. Plaintiff alleges violations of Title II of the Americans with Disabilities Act of 1990 ("ADA") and the Rehabilitation Act of 1973 ("Rehabilitation Act"). He pursues these claims against the KDHE, as well as several individually-named officials of the KDHE in their official capacities (collectively "Defendants"). This matter is currently before the Court on Defendants' Motion to Dismiss First

Amended Complaint (Doc. 23).  For the reasons stated below, the Court denies in part and grants

in part Defendants' motion.  It denies Defendants' requests to abstain under the *Colorado River*

doctrine and to dismiss Plaintiff's ADA and Rehabilitation Act claims for failure to state a claim

upon which relief can be granted, and grants Defendants' request to dismiss the individually-

named Defendants.

## I.      Factual and Procedural Background[1]

Plaintiff has several conditions that substantially limit one or more of his major life

activities and is a qualified person with a disability as defined by the ADA and the Rehabilitation

Act.  His continuing conditions include autistic spectrum disorder, borderline IQ, cerebral palsy,

epilepsy and seizure disorders, type II diabetes, high cholesterol, depression, and psoriasis.

Plaintiff began receiving benefits through the Kansas WORK program in 2014.

The KDHE's division of Health Care Finance administers the Kansas Medicaid programs,

including the WORK program at issue here.  Kansas implemented the WORK program in 2007,

and, through its participation in the federal Medicaid program, receives federal financial

assistance.  The WORK program is based on 42 U.S.C. § 1396n(j) and 42 C.F.R. Part 441, Subpart

J, and is generically known as a "cash and counseling" program.

The KDHE issued an administrative manual for WORK that specifies the various

definitions, scope, functions, and limitations for the WORK program.  In it, the KDHE describes

the WORK program as "a program through which people enrolled in Working Healthy receive

personal assistance services (PAS)."  Under the WORK manual, PAS include one or more persons

---

[1] The Court recites the facts as identified in Plaintiff's First Amended Complaint, drawing all reasonable inferences in the light most favorable to Plaintiff.

physically assisting an individual with, or cuing/prompting an individual, to perform Activities of Daily Living (ADLs) or Instrumental Activities of Daily Living (IADLs).  ADLs include bathing, grooming, toileting, transferring, feeding, and mobility.  IADLs include housecleaning, laundry, meal preparation, money management, lawn care/snow removal, and transportation.

As part of the WORK program, Plaintiff received an initial assessment on April 23, 2014, that identified Plaintiff as having a need of 91.97 monthly PAS hours.  This resulted in a monthly allocation of $1,182.00 for the period beginning June 1, 2014, and ending May 31, 2015.  The KDHE approved Plaintiff's proposed budget for the 2014-2015 period, which proposed to utilize the allotted funds on a monthly basis as follows: $50.00 for transportation, $35.00 for housekeeping, and $1,092.00 to Kansas Focus for 52 hours of personal services at $21.00 per hour. This budget utilized approximately 56% of the 91.97 assessed monthly hours.  Partway through the 2014-2015 period, Plaintiff proposed a revision to his original budget that allotted an additional $80.00 for transportation and reduced the amount of funds to Kansas Focus to $1,008.00 for 48 hours of personal service.  The KDHE approved the revised budget on November 19, 2014.

Plaintiff alleges that although PAS providers are generally allowed $13.25 per hour, the KDHE allowed Plaintiff to pay Kansas Focus $21.00 per hour because of its expertise in dealing with persons who have the same disabilities as Plaintiff, as well as its ability to accomplish more in fewer hours.  Because Plaintiff paid a higher hourly rate for PAS, his budget utilized a lower percentage of the assessed hours than if he paid for services at a rate of $13.25 per hour.

In April 2015, Plaintiff received a re-assessed monthly need of 102.4 PAS hours and a 2015-2016 allocation of $1,316.00 per month.  His proposed 2015-2016 budget utilized approximately 57% of the assessed hours and called for 59 hours of services from Kansas Focus per month, at $21.00 per hour.  At some point after Plaintiff's assessment, Defendants

communicated that Plaintiff's budget must utilize at least 70% of the assessed hours.  This 70% utilization rule had not previously been communicated to Plaintiff or enforced against Plaintiff, and it does not appear in any documents published by the KDHE, including the administrative manual for the WORK program.  On May 7, 2015, Plaintiff's brother wrote Defendant Marney on Plaintiff's behalf requesting a modification in the KDHE's practice of refusing to approve a budget utilizing less than 70% of the hours.  In an attempt to engage in the interactive process, Plaintiff's brother offered to travel to Topeka to meet with Defendant Marney, but she ignored his offer. Defendants were also given a schedule demonstrating how all of Plaintiff's needs would be met under the proposed budget.

All parties involved in the 2015 assessment, including KDHE personnel, agreed that Plaintiff's proposed use of funds, which tracked the 2014-2015 budget, works for Plaintiff. Regardless, Defendants Marney and Wright rejected Plaintiff's proposed budget on May 13, 2015. That same day Plaintiff's brother again wrote Defendant Marney requesting a reasonable accommodation by modifying the practice of automatically rejecting the proposed budget because it utilized less than 70% of the assessed hours, but Defendants did not agree to his request.

Plaintiff appealed the denial of his proposed budget and an administrative law judge affirmed the KDHE's rejection of the budget.  Plaintiff filed a petition for review before the Division of Health Care Finance State Appeals Committee, and that committee also affirmed the KDHE's decision.  Plaintiff then filed a Petition for Judicial Review in the Johnson County District Court on July 26, 2017.

Plaintiff filed this action on July 27, 2017, and filed his First Amended Complaint on October 31, 2017.  Plaintiff alleges that Defendants violated the ADA and Rehabilitation Act by failing to provide a reasonable modification to its practice of denying a proposed budget that

utilizes less than 70% of the assessed hours.  He seeks a permanent injunction enjoining Defendants from enforcing their practice to automatically disapprove Plaintiff's proposed budget. Defendants filed a motion to dismiss alleging that Plaintiff has failed to state a claim under the ADA or Rehabilitation Act, that this Court should abstain from hearing this case under the *Colorado River* doctrine, and that the individually-named Defendants should be dismissed given the KDHE's status as a Defendant in this case.

## II.     Legal Standard

Under Rule 12(b)(6), a party may move for dismissal of "a claim for relief in any pleading" that fails to state a claim upon which relief can be granted.  Upon such motion, the Court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[2]  "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient;" rather, the complaint "must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[3]  The Court does not "weigh potential evidence that the parties might present at trial," but assesses whether the complaint "alone is legally sufficient to state a claim for which relief may be granted."[4]  In determining whether a claim is facially plausible, the Court must draw on its judicial experience and common sense.[5]  All well-pleaded facts are assumed to be true and are construed

---

[2] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[3] *Ridge at Red Hawk*, 493 F.3d at 1177 (emphases in original).

[4] *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation omitted).

[5] *Iqbal*, 556 U.S. at 679.

in the light most favorable to the non-moving party.[6]   Allegations that merely state legal conclusions, however, need not be accepted as true.[7]

### III.   Analysis

**A.    The Court will not abstain under the *Colorado River* doctrine.**

"As a general rule, 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.' "[8]   In "the ordinary course of things," federal courts "will not and should not shy away from contemporaneously exercising concurrent jurisdiction with a state court."[9]   At times, however, " 'reasons of wise judicial administration' must weigh in favor of 'permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding.' "[10]   Indeed, although Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," this obligation is not absolute.[11]   "It is well-established that 'federal courts have the power to refrain from hearing,' among other things, 'cases which are duplicative of a pending state proceeding.' "[12]   This power, however, should only be exercised in "exceptional circumstances."[13]

---

[6] *Albers v. Bd. of Cty. Comm'rs of Jefferson Cty.*, 771 F.3d 697, 700 (10th Cir. 2014).

[7] *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[8] *D.A. Osguthorpe Family P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1233 (10th Cir. 2013) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).

[9] *Id.*

[10] *Id.* (quoting *Colorado River*, 424 U.S. at 818).

[11] *Id.* (quoting *Colorado River*, 424 U.S. at 817).

[12] *Id.* (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716-17 (1996)).

[13] *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983) (quotation omitted).

The U.S. Supreme Court originally identified four factors to aid the Court in determining whether to abstain from hearing a case under *Colorado River*: "(1) whether the state or federal court first assumed jurisdiction over the same res; (2) 'the inconvenience of the federal forum'; (3) 'the desirability of avoiding piecemeal litigation'; and (4) 'the order in which jurisdiction was obtained by the concurrent forums.' "[14] The Court later "supplemented its original *Colorado River* framework with additional factors for courts to weigh when deciding the appropriateness of abstention," including "whether 'federal law provides the rule of decision on the merits,' " and "whether the state-court proceedings adequately protect the litigants' rights."[15] Further "a court may take into account the possibly 'vexatious or reactive nature of either the federal or the state litigation.' "[16]

Defendants have not identified the presence of "exceptional circumstances" to warrant abstention under the *Colorado River* doctrine in this case.  Defendants do not argue that the first or second *Colorado River* factors counsel in favor of abstention—nor does it appear that these factors would favor Defendants.  Rather, Defendants note that proceeding in the current case will result in piecemeal litigation with potentially duplicative or inconsistent rulings, that the state Kansas Judicial Review Act ("KJRA") action largely mirrors this action, and that state-level administrative and judicial litigation has been ongoing since 2015.  As to the third factor, the mere possibility of piecemeal litigation simply does not present such "exceptional circumstances" as to

---

[14] *D.A. Osguthorpe*, 705 F.3d at 1234 (quoting *Colorado River*, 424 U.S. at 818-19).

[15] *Id*. at 1235 (quoting *Moses H. Cone*, 460 U.S. at 23, 26-27).

[16] *Id*. (quoting *Moses H. Cone*, 460 U.S. at 17 n.20).

warrant abstention under *Colorado River*.[17]   The fourth factor also does not weigh in favor of abstention.  Although the state lawsuit predates the federal lawsuit by only one day, priority should be measured "in terms of how much progress has been made in the two actions."[18]   Defendants provide no meaningful information regarding the status of the state proceedings to justify abstention—rather, they simply allege that this action does not have the administrative history, litigation, discovery and argument already present in the Kanas court action.[19]   Further, the additional factors identified in *Moses H. Cone* also do not present "exceptional circumstances" to justify abstention.  Although the parties do not address whether the state court proceedings would adequately protect the litigants' rights, this lawsuit involves federal claims and nothing in the record suggests either case is vexatious in nature.  The Court declines Defendants' request to abstain from hearing Plaintiff's claims under the *Colorado River* doctrine.

**B.      Plaintiff may proceed with his ADA and Rehabilitation Act claims.**

> *1.      The Court will not consider materials not contained in Plaintiff's First Amended Complaint.*

As an initial matter, the Court must first determine whether Defendants' motion to dismiss should be treated as a motion for summary judgment under Rule 12(d).  While Defendants have styled the current motion as a motion to dismiss under Rule 12(b)(6), they have wholly failed to follow the rules applicable to such motions.  Namely, that the Court consider only the facts

---

[17] *See, e.g.*, *Bd. of Cty. Comm'rs of Douglas Cty. v. Hayden*, 715 F. Supp. 313, 315 (D. Kan. 1989) (rejecting request to abstain under *Colorado River* doctrine where state and federal complaints were filed at essentially the same time, both lawsuits were filed in the same part of Kansas, and possibility of piecemeal litigation was not an exceptional circumstance warranting abstention).

[18] *D.A. Osguthorpe*, 705 F.3d at 1235 (quotation omitted).

[19] *Id.* (noting that the docket in the state court action at issue there contained "thousands of entries" and had been described as "one of the greatest consumers of the resources" of the state district court in many years).

contained in Plaintiff's First Amended Complaint when determining whether Plaintiff has adequately stated a claim upon which relief may be granted.  Instead, Defendants have attached exhibits purporting to demonstrate numerous facts not contained in Plaintiff's First Amended Complaint.  These exhibits include an agreed stipulation of facts purportedly filed and utilized in a state administrative hearing, a declaration by Defendant Wright, and a copy of the Petition for Judicial Review filed in Kansas state court.  Plaintiff recognizes that, with the exception of the Wright Declaration, Defendants exhibits are part of the public record in the administrative proceedings, and does not object to the Court's consideration of the exhibits *without converting* the Motion to Dismiss to a Motion for Summary Judgment.

The Court "may take judicial notice of publicly-available court documents and matters of public record without converting a motion to dismiss for failure to state a claim into a motion for summary judgment, so long as those facts are not in dispute."[20]  Such judicial notice, however, is limited to "*facts* which are a matter of public record."[21]  Thus, while the Court may take judicial notice of the fact that administrative proceedings occurred or that certain documents are part of the public record, it cannot also take judicial notice of "the *truth* of matters asserted therein" simply because it is part of the public record.[22]  That the parties seemingly stipulated to a set of facts for purposes of the administrative hearing does not change the Court's analysis as parties frequently stipulate to matters for certain limited purposes.

---

[20] *Autry v. Motel*, 2010 WL 5137541, at *2 (D. Kan. 2010) (citing *Pace v. Swerdlow*, 519 F.3d 1067, 1072-73 (10th Cir. 2008); *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006)).

[21] *Tal*, 453 F.3d at 1264 n.24 (quoting *Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000)) (emphasis added).

[22] *Id.* (quotation omitted) (emphasis added).

The Court has discretion in determining whether to consider materials beyond the pleadings and whether to convert a motion to dismiss to a motion for summary judgment.[23]  The Court concludes that ruling on the instant motion without converting it to one for summary judgment best serves this case.  Accordingly, the Court accepts as true the well-pleaded facts contained in Plaintiff's First Amended Complaint and draws all reasonable inferences from them in favor of Plaintiff, the non-moving party, and ignores the attached materials of which the Court may not take judicial notice.

2.    *The Court denies Defendants' arguments in favor of dismissal of Plaintiff's ADA and Rehabilitation Act claims.[24]*

Plaintiff alleges that Defendants discriminated against him by failing to make reasonable modifications to its practices and policies as applied to Plaintiff.  He seeks a permanent injunction enjoining Defendants from enforcing its practice of automatically rejecting the Plaintiff's budget where the proposed number of hours utilized falls below 70% of the number of PAS hours Plaintiff is assessed as needing, and requests an award of attorneys' fees, expenses, and costs.

Title II of the ADA, provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[25] "To make a viable claim under Title II," Plaintiff must prove (1) that he "is a qualified individual

---

[23] *Lybrook v. Members of Farmington Mun. Sch. Bd. of Educ.*, 232 F.3d 1334, 1341-42 (10th Cir. 2000) ("[T]he mere fact that the parties provided documents to the district court did not require the district court to rely on those documents.").

[24] Plaintiff's ADA and Rehabilitation Act claims appear premised upon the same underlying allegations. Plaintiff does not allege otherwise.  Accordingly, since such claims are typically analyzed under the same legal standard, with one difference noted below, and neither party argues otherwise, the Court will address the claims together.

[25] 42 U.S.C. § 12132.

with a disability;" (2) that he "was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination was by reason of [his] disability."[26]  Title II's prohibition against discrimination "applies to action that carries a discriminatory effect, regardless of the [entity's] motive or intent."[27]   Accordingly, Courts recognize "three ways to establish a discrimination claim: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation."[28]

Here, Plaintiff relies on the third method of establishing a discrimination claim—failure to make a reasonable modification.[29]   Under Title II of the ADA, "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity."[30]

---

[26] *Hans v. Bd. of Shawnee Cty. Comm'rs*, 2018 WL 1638503, at *17 (D. Kan. 2018) (citation omitted).  To succeed on his Rehabilitation Act claim, Plaintiff must prove an additional element—that the KDHE receives federal financial assistance.  *See* 29 U.S.C. § 794(a).  Plaintiff's First Amended Complaint adequately alleges this element.

[27] *Tyler v. City of Manhattan*, 857 F. Supp. 800, 817 (D. Kan. 1994) (citations omitted).

[28] *J.V. v. Albuquerque Pub. Schs.*, 813 F.3d 1289, 1295 (10th Cir. 2016) (citations omitted).

[29] Although Title II uses the phrase "reasonable modification," Courts frequently use the terms "reasonable modification" and "reasonable accommodation" interchangeably in this context.  *See, e.g.*, *Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185, 1195 n.8 (10th Cir. 2007) ("Title II's use of the term 'reasonable modifications' is essentially equivalent to Title I's use of the term 'reasonable accommodation.'  In Title II cases, this Court has used the terms interchangeably, referring to an individual's request for a 'modification' under Title II as a request for 'accommodation.' ") (citations omitted).

[30] 28 C.F.R. § 35.130(b)(7)(i).  The Rehabilitation Act also requires those entities receiving federal financial assistance to provide reasonable modifications.  *See Alexander v. Choate*, 469 U.S. 287, 300 (1985); *Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1226 n.2 (10th Cir. 2009) (citations omitted).

Plaintiff alleges that Defendants failed to provide a reasonable modification of the KDHE's stated, yet unpublished, practice of denying budgets utilizing less than 70% of the assessed PAS hours.  He alleges that he requires the use of higher hourly rate employees with expertise in dealing with persons having the same disabilities as him, and argues that these skilled workers accomplish more than unskilled workers in fewer hours.  The logical inference is that by paying skilled workers, Plaintiff obtains more value for each hour of services and that although he receives fewer hours from the skilled workers, the hours he does receive cover his needs.  Although Defendants previously approved a similar budget in 2014, Defendants denied Plaintiff's proposed budget in 2015, as it purportedly violated an unpublished practice regarding the approval of budgets.  Plaintiff argues that Defendants failed to consider or adopt a reasonable modification of this practice in light of his disability-specific needs.

Plaintiff has adequately pleaded a cause of action under Title II of the ADA.  First, Plaintiff alleges that he is a qualified individual within the meaning of the ADA.[31]  Second, Plaintiff alleges that Defendants denied him the right to participate in or obtain benefits provided by a public entity through the Kansas WORK program.[32]  And third, Plaintiff alleges that his exclusion and denial of benefits under the WORK program was "solely by reason of his disability."  He alleges Defendants discriminated against him by failing to make or even consider a reasonable modification to the KDHE's practice of not authorizing budgets utilizing less than 70% of the assessed hours.

---

[31] A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."  42 U.S.C. § 12131(2).

[32] A "public entity" includes any state or local government, as well as any department, agency, or other instrumentality of a state.  42 U.S.C. § 12131(1).

Defendants assert several arguments in favor of dismissal.  Defendants argue that Plaintiff fails to state a claim upon which relief can be granted because (1)  he has not identified which of his disabilities the Defendants used to make their decisions or alleged that Defendants discriminated against him due to his disabilities, (2) his requested budget violates applicable federal Medicaid regulations,[33] (3) his request for skilled services is unreasonable, and (4) Defendants had final authority over approval of Plaintiff's budget and Plaintiff agreed to this by signing a consent form.

> a.  Plaintiff need not identify a specific disability Defendants used in making their decisions and did not fail to plead discrimination due to a disability.

Defendants argue that Plaintiff fails to state a claim under the ADA because Plaintiff has not identified the specific disability that Defendants relied on as the sole basis for their purported discrimination.  Defendants' brief on this point lacks merit.  It proceeds as follows:

> [B]efore one can determine if a reasonable modification is necessary in a case, you must first determine if there has been discrimination due to a disability. . . . If there is no such discrimination due to a disability, there is really no need to progress to an analysis of a reasonable modification. . . .  Facially, Plaintiff states no allegation in his First Amended Complaint that the Defendants discriminated against the Plaintiff due to his disabilities. . . . Defendants submit that Plaintiff's First Amended Complaint states no ADA claim against the Defendants since it does not identify which of the Plaintiff's disabilities was used by the Defendants to make their decisions in this matter.

First, a failure to provide a reasonable modification under the ADA constitutes discrimination in and of itself.[34]  Regardless, Plaintiff's First Amended Complaint specifically

---

[33] Defendants address the applicability of federal regulations in several portions of their brief.

[34] *Tennessee v. Lane*, 541 U.S. 509, 537 (2004) (J. Ginsberg, concurring) (recognizing that in enacting the ADA, Congress advanced " 'a more comprehensive view of the concept of discrimination,' one that embraced failures to provide 'reasonable accommodations' ") (quoting *Olmstead v. L.C.*, 527 U.S. 581, 598, 601 (1999)); *Albuquerque Pub. Schs.*, 813 F.3d at 1295 (recognizing that discrimination may be predicated on a "failure to make a reasonable accommodation") (citations omitted).

alleges that Defendants "discriminated against him by failing to make reasonable modifications to its practices and policies where such modifications are necessary to afford [him] the benefits of the WORK program." He also specifically alleges that he has been excluded from participating in the WORK program or been denied benefits under the program "solely by reason of his disability." Defendants' argument that Plaintiff's First Amended Complaint does not allege that Defendants discriminated against him due to his disabilities fails.

Second, Defendants cite no legal authority for their contention that Plaintiff must identify the specific disability Defendants "used" in making their decisions in this matter. Defendants do not elaborate on this vague assertion. To the extent this assertion suggests that Plaintiff must show that Defendants intentionally discriminated against Plaintiff because of one of his disabilities, it relies on a faulty premise. Defendants need not "use" any of Plaintiff's disabilities in making their decisions for them to have failed to provide a reasonable modification. Further, Plaintiff's First Amended Complaint implies that he needed certain services due to a combination of his disabling conditions, not due to just one single condition.

   b. The federal Medicaid regulations do not impose the requirements alleged by Defendants.

Much of Defendants' brief focuses on their claim that Plaintiff's proposed budget violates federal regulations. Defendants cite several regulations in support of this assertion, including 42 C.F.R. §§ 441.464(a)(1), 441.466(b), and 441.470, and claim that the KDHE's policies stem from these controlling regulations. According to Defendants, Plaintiff's proposed budget and request for relief in this action would result in a violation of these regulations. Defendants have failed to identify the language in the cited regulations, or any interpretation thereof, that requires the result advanced by Defendants.

-14-

Section 441.464 requires that states assure certain requirements are met, including necessary safeguards.  It provides, in relevant part:

A state must assure that the following requirements are met:

(a) Necessary safeguards.  Necessary safeguards have been taken to protect the health and welfare of individuals furnished services under the program and to assure the financial accountability for funds expended for self-directed services.

   (1) Safeguards must prevent the premature depletion of the participant directed budget as well as identify potential service delivery problems that might be associated with budget underutilization.

   (2) These safeguards may include the following:

      (i)    Requiring a case manager, support broker or other person to monitor the participant's expenditures.

      (ii)   Requiring the financial management entity to flag significant budget variances (over and under expenditures) and bring them to the attention of the participant, the participant's representative, if applicable, case manager, or support broker.

      (iii)  Allocating the budget on a monthly or quarterly basis.

      (iv)   Other appropriate safeguards as determined by the State.

   (3) Safeguards must be designed so that budget problems are identified on a timely basis so that corrective action may be taken, if necessary.

While the regulation requires the state to adopt safeguards to prevent the premature depletion of a participant's budget, the regulation provides only broad principles to guide the state's implementation of safeguards.  Nothing in 42 C.F.R. § 441.464(a)(1) requires Defendants to deny Plaintiff's proposed budget simply because it utilizes less than 70% of the assessed hours, and Defendants identify no interpretation of this regulation supporting the interpretation they

propound.  The regulation, rather, delegates the implementation of the necessary safeguards to the

state.[35]

The next regulation cited by Defendants addresses the assessment of need.  It too does not

mandate the result argued by Defendants.  Section 441.466 states, in full:

> States must conduct an assessment of the participant's needs, strengths, and preferences in accordance with the following:
>
> (a) States may use one or more processes and techniques to obtain information about an individual, including health condition, personal goals and preferences for the provision of services, functional limitations, age, school, employment, household, and other factors that are relevant to the need for and authorization and provision of services.
>
> (b) Assessment information supports the determination that an individual requires PAS and also supports the development of the service plan and budget.

Finally, 42 C.F.R. § 441.470, also does not require Defendants to deny Plaintiff's proposed

budget for falling below a 70% utilization ratio.  It reads, in full:

> A service budget must be developed and approved by the State based on the assessment of need and service plan and must include the following:
>
> (a) The specific dollar amount a participant may utilize for services and supports.
>
> (b) How the participant is informed of the amount of the service budget before the service plan is finalized.
>
> (c) The procedures for how the participant, or participant's representative, if applicable, may adjust the budget, including the following:
>
>> (1) How the participant, or participant's representative, if applicable, may freely make changes to the budget.
>>
>> (2) The circumstances, if any, that may require prior approval before a budget adjustment is made.

---

[35] One commentator has noted that the regulations "mandate numerous protective measures" but "leave the details to state discretion."  Bridget Haeg, *The Future of Caring for Elders in Their Homes: An Alternative to Nursing Homes*, 9 NAELA J. 237, 249 (Fall 2013).

(3) The circumstances, if any, that may require a change in the service plan.

(d) The procedure(s) that governs how a person, at the election of the State, may reserve funds to purchase items that increase independence or substitute for human assistance, to the extent that expenditures would otherwise be made for the human assistance, including additional goods, supports, services or supplies.

(e) The procedure(s) that governs how a person may use a discretionary amount, if applicable, to purchase items not otherwise delineated in the budget or reserved for permissible purchases.

(f) How participants, or their representative, if applicable, are afforded the opportunity to request a fair hearing under § 441.300 if a participant's, or participant's representative, if applicable, request for a budget adjustment is denied or the amount of the budget is reduced.

Nothing in any of the federal regulations cited by Defendants required Defendants to reject Plaintiff's proposed budget or refuse to consider his request for a reasonable modification. Thus, while the KDHE's unwritten policy may be based on its interpretation of these regulations, it is not mandated by the terms of these regulations. Defendants direct the Court to no rule or regulation prohibiting Defendants from authorizing Plaintiff's proposed budget. Accordingly, the Court rejects Defendants' arguments that authorizing Plaintiff's proposed budget at the proposed utilization rate violates federal Medicaid regulations and all arguments premised thereon.

        c.   Defendants have not shown that Plaintiff's request for a reasonable modification is unreasonable.

When analyzing the reasonableness of a requested modification, Courts analyze whether the modification "would fundamentally alter the nature of the service, program, or activity."[36] The Court simply cannot hold, based on the facts alleged in Plaintiff's First Amended Complaint, that

---

[36] 28 C.F.R. § 35.130(b)(7)(i).

as a matter of law, Plaintiff's requested modification would fundamentally alter the nature of the WORK program—especially in light of Defendants' actions in twice approving a budget utilizing the same methodology. Defendants' arguments that it would fundamentally alter the nature of the WORK program rely on facts not contained in Plaintiff's First Amended Complaint, and are improperly presented at the motion to dismiss stage. Should Defendants wish to pursue such arguments in the future, they should file a dispositive motion that allows the Court to properly consider facts other than those contained in the pleadings—a motion for summary judgment, for example—and follow the Federal Rules of Civil Procedure and local rules governing such motions.

> d.  The regulation cited by Defendants does not exempt them from complying with civil rights laws, and the Court cannot conclude as a matter of law that Plaintiff waived his rights under the ADA and Rehabilitation Act.

Defendants' final argument for dismissal of Plaintiff's claims requests dismissal because Defendants have been delegated final authority of the approval of a participant's budget under 42 C.F.R. § 441.470 and because Plaintiff signed a consent agreeing that the KDHE has the final authority to approve a WORK budget. In essence, Defendants argue that when it comes to approving a participant's budget in the WORK program, Defendants have complete discretion to do as they please, without regard to civil rights laws.

Nothing in 42 C.F.R. § 441.470 exempts Defendants from complying with other applicable federal laws, including the ADA and the Rehabilitation Act. Thus, while Defendants may have final authority over the approval of a budget, they may not exercise their discretion in a manner that violates federal civil rights laws. Further, that Plaintiff signed a consent agreeing that the KDHE has final authority for approving WORK budgets does not require dismissal of this case. Not only does this argument again improperly introduce facts not contained in Plaintiff's First Amended Complaint, but it also asks the Court to hold that Plaintiff prospectively waived his rights

to be free from discrimination under the ADA and Rehabilitation Act.  Defendants provide no authority for this result, and while waivers of federal civil rights may be enforceable in certain situations, such waivers are disfavored and analyzed under the specific circumstances presented—an inquiry improper on the record before the Court.

**C.     The Court dismisses the individually-named Defendants.**

Finally, Defendants argue that the individually-named Defendants should be dismissed from this matter as the KDHE is the "real party in interest."  Plaintiff objects only to the dismissal of Defendants Wright and Marney.  He alleges that these Defendants personally discriminated against Plaintiff and asserts that it is necessary to name these Defendants so that any injunction will apply to them as named parties.  Courts in this District frequently dismiss official capacity claims against individually-named Defendants when the lawsuit also names the entity employing the individually-named officers.[37]  "A suit against a government official in his 'official capacity' is not a suit against the official but rather is a suit against the official's office."[38]  "An official capacity claim is 'to be treated as a suit against the entity.  It is not a suit against the official personally, for the real party in interest is the entity.' "[39]  Here, Plaintiff has named the entity—the KDHE—as a Defendant, and the KDHE is the real party in interest with respect to Plaintiff's official capacity claims.  Accordingly, as Plaintiff has brought claims against the individually-

---

[37] *See Bushnell v. City of Chanute*, 2013 WL 1137486, at *1 (D. Kan. 2013); *Smith v. Bd. of Cty. Comm'rs of Cty. of Lyon*, 216 F. Supp. 2d 1209, 1219-20 (D. Kan. 2002); *Burns v. Bd. of Comm'rs of Cty. of Jackson*, 197 F. Supp. 2d 1278, 1296-97 (D. Kan. 2002); *Lewis v. City of Topeka*, 2003 WL 21212564, at *1 (D. Kan. 2003).

[38] *Bushnell*, 2013 WL 1137486, at *1 (citing *Brown v. Montoya*, 662 F.3d 1152, 1163 n.8 (10th Cir. 2011)).

[39] *Id*. (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

named Defendants only in their official capacities, the Court grants Defendants request to dismiss the individually-named Defendants.

## IV.    Conclusion

The Court denies Defendants' request to abstain from hearing this case under the *Colorado River* doctrine, and denies Defendants' request to dismiss Plaintiff's ADA and Rehabilitation Act claims under Rule 12(b)(6).  Defendants' arguments in favor of dismissal either lack legal merit or rely on facts not contained in Plaintiff's First Amended Complaint and not properly considered at the motion to dismiss stage.  The Court grants Defendants' request to dismiss the individually-named Defendants as Plaintiff has alleged claims against these Defendants only in their official capacities and it is unnecessary to include the individually-named Defendants in their official capacities since the KDHE is also a Defendant.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss First Amended Complaint (Doc. 23) is **GRANTED IN PART** and **DENIED IN PART**.  The Court **GRANTS** Defendants' request to dismiss the individually-named Defendants from this case, and **DENIES** Defendants' remaining requests.

**IT IS SO ORDERED**.

Dated this 18th day of May, 2018.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE