## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| THOMAS BELANCIO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Case No. 17-CV-01180 |
| | ) | |
| KANSAS DEPARTMENT OF HEALTH AND ENVIRONMENT, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I.      Nature of the Matter

Plaintiff is a qualified individual with a disability who was excluded from participation in and denied the benefits and services of the WORK Program of the Kansas Department of Health and Environment or services, or was otherwise discriminated against by the Defendant by virtue of its refusal to make reasonable modifications in its polices, practices, or procedures.  The denial and discrimination was by reason of Plaintiff's disability.

The Court accurately described the nature of the matter in its May 18, 2018, Memorandum and Order with the exception of events that have occurred following the filing of the First Amended Complaint.  (Dkt. 34)

Personal Assistance Services (PAS) providers are generally allowed $13.25 per hour.  The Defendant KDHE allowed Plaintiff to pay Kansas Focus $21.00 per hour because of its expertise in dealing with persons who have the same disabilities as Plaintiff, as well as its ability to accomplish more in fewer hours. Because Plaintiff paid a

higher hourly rate for PAS, his budget utilized a lower percentage of the assessed hours than if he paid for services at a rate of $13.25 per hour.

In April 2015, Plaintiff received a re-assessed monthly need of 102.4 PAS hours and a 2015-2016 allocation of $1,316.00 per month. His proposed 2015-2016 budget utilized approximately 57% of the assessed hours and called for 59 hours of services from Kansas Focus per month, at $21.00 per hour. At some point after Plaintiff's assessment, Defendants communicated that Plaintiff's budget must utilize at least 70% of the assessed hours. This 70% utilization rule had not previously been communicated to Plaintiff or enforced against Plaintiff, and it does not appear in any documents published by the KDHE, including the administrative manual for the WORK program. On May 7, 2015, Plaintiff's brother wrote Defendant Marney on Plaintiff's behalf requesting a modification in the KDHE's practice of refusing to approve a budget utilizing less than 70% of the hours. In an attempt to engage in the interactive process, Plaintiff's brother offered to travel to Topeka to meet with Sherri Marney, WORK Program Manager, but she ignored his offer.

Defendant was also given a schedule demonstrating how all of Plaintiff's needs would be met under the proposed budget. All parties involved in the 2015 assessment, including KDHE personnel, agreed that Plaintiff's proposed use of funds, which tracked the 2014-2015 budget, works for Plaintiff.

Regardless, Defendants Marney and Wright rejected Plaintiff's proposed budget on May 13, 2015. That same day Plaintiff's brother again wrote Defendant Marney requesting a reasonable accommodation by modifying the practice of automatically rejecting the proposed budget because it utilized less than 70% of the assessed hours, but Defendants did not agree to his request.

Plaintiff appealed the denial of his proposed budget and an administrative law judge affirmed the KDHE's rejection of the budget. Plaintiff filed a petition for review before the Division of Health Care Finance State Appeals Committee, and that committee also affirmed the KDHE's decision.

Plaintiff then filed a Petition for Judicial Review in the Johnson County District Court on July 26, 2017.  After that, the Plaintiff developed problems with the services provided by Kansas Focus and because of the absence of agencies who were willing to provide skilled services at the rate allowed by KDHE, converted his program from an agency-directed program to a self-directed, stop-gap program which would allow his brother to self-direct the program at a reduced rate per hour resulting in utilization of 70% of the assessed hours.  The budget for this program was approved by the Defendant but is not sustainable; the Plaintiff requires an agency-directed program.  Because of this, the Petition for Judicial Review in the Johnson County District Court was voluntarily dismissed by Plaintiff on June 6, 2018.

Plaintiff alleges that Defendants violated the ADA and Rehabilitation Act by failing to provide a reasonable modification to its practice of denying a proposed budget that utilizes less than 70% of the assessed hours. He seeks a permanent injunction enjoining Defendants from enforcing their practice to automatically disapprove Plaintiff's proposed budget.

Plaintiff contends that a reasonable modification of the Defendant's policies and procedures can be attained by declining to automatically reject a budget utilizing less than 70% of the assessed hours.

In the alternative, Plaintiff contends that the same result can be achieved by reducing his allocated hours for skilled services to 65.5 hours (or whatever the

assessment requires ) at the rate of $21.00 per hour (or whatever the going rate is).  The alternative solution seems to be the more reasonable approach.

## II.    Statements of Uncontroverted Facts

## A.    Preliminary Matters

Despite the following objections, Plaintiff has included some of Defendant's Statements of Uncontroverted Facts, along with exhibits and references to the record as supported by the Plaintiff's Declaration, in his Statement of Additional Uncontroverted Facts.

**1.    Most of Defendant's Statement of Uncontroverted Facts do not refer to those portions of the records upon which the Defendant relies as required by Fed.R.Civ.P. 56 and D. Kan. Rule 7.6.**

Fed.R.Civ.P. 56(c)(1) provides:

"(c) PROCEDURES.
    (1) *Supporting Factual Positions.*  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
            (A)   citing to particular parts of materials in the record ... or,
            (B)   showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

D. Kan. Rule 7.6 provides:

"All briefs and memoranda filed with the court must contain:... (2) a concise statement of the facts, with each statement of fact supported by reference to the record...."

The Defendant has numbered its Uncontroverted Facts as paragraphs 1-9 and then starts again at paragraphs 7 through 11.  (There are two paragraphs numbered 7, 8 and 9.)  Only the first paragraph 8, the second paragraph 8, and paragraph 11 contain a reference to the record, and both paragraphs numbered 8 refer to the "declarations" of Sherri Marney.

Paragraphs 1-9 and the following paragraphs 7-11 should be disregarded.

**2.     The purported declarations attached as exhibits to the Defendants'
memorandum do not comply with the law.**

28 U.S. Code § 1746 requires that the declaration must be signed in "substantially
the following form:" "I declare (or certify, verify, or **state**) under penalty of perjury that
the foregoing is true and correct. Executed on (date)."  K.S.A. 53-601(a)(2) requires an
unsworn declaration to be signed with the following declaration:   " "I declare (or verify,
certify or state) under penalty of perjury that the foregoing is true and correct. Executed
on (date)."

Neither Exhibits B (Dkt. 38-2) nor C (Dkt. 38-3) to the Defendants'
Memorandum (Dkt. 38), the purported declarations of Sherri Marney, or Exhibit D
(Dkt. 38-4), the purported declaration of Mary Ellen O'Brien Wright, include the
substance of any statement that the declaration is made "under penalty of perjury that
the foregoing is true and correct."  Only the date executed is included.

The three purported declarations should be disregarded.

**3.     Unnumbered statements of fact in addition to the Statement of
Uncontroverted Facts are scattered throughout the Defendant's
Motion and Memorandum.**

The Defendant refers to the "official record" being filed in Johnson County
District Court and again asks the Court to take judicial notice of the Agreed Stipulations.
(Defendant Brief, Dkt. 38, p. 6).  The "official record" is not part of the record; the
Plaintiff is uncertain what purpose this reference has.

As to the request to take judicial notice of the Agreed Stipulations, this Court has
addressed that in the Court's Order denying the Motion to Dismiss, this Court noted:

> "The Court 'may take judicial notice of publicly-available court documents and
> matters of public record without converting a motion to dismiss for failure to
> state a claim into a motion for summary judgment, so long as those facts are not
> in dispute.'  Such judicial notice, however, is limited to *facts which are a matter of*

public record.'  Thus, while the Court may take judicial notice of the fact that administrative proceedings occurred or that certain documents are part of the public record, it cannot also take judicial notice of 'the *truth* of matters asserted therein' simply because it is part of the public record.  That the parties seemingly stipulated to a set of facts for purposes of the administrative hearing does not change the Court's analysis as parties frequently stipulate to matters for certain limited purposes."  (Footnoted citations omitted.) (Court's Memorandum and Order, Dkt. 34, p. 9)

## 4. Plaintiff's Responses to Defendants' Statement of Uncontroverted Facts

1.      On April 23, 2015, the Plaintiff was assessed as needing 102.4 monthly PAS hours; contemporaneously, Plaintiff signed forms consenting to the WORK regulatory and policy requirements.

PLAINTIFF'S RESPONSE:  This statement is controverted because this statement is not supported by any attached exhibits or even by the purported declarations.  However, see Plaintiff's Additional Statement of Uncontroverted Facts No. 34 and 35.

2.      Using the WORK allocation formula (of $13.25 times the number of monthly PAS hours assessed as needed by the Plaintiff) and after a payment of a financial management service fee, the Plaintiff was allocated $1,316 per month to purchase the PAS services for the 2016 budget year.

PLAINTIFF'S RESPONSE:  This statement is controverted because this statement is not supported by any attached exhibits or even by the purported declarations. However, see Plaintiff's Additional Statement of Uncontroverted Fact No. 36.

3.      The Plaintiff, with the assistance of Independent Living Counselor Rita
Patience, created and submitted a budget for 2016 of $1,314 to the WORK program
manager, Ms. Sherri Marney.

PLAINTIFF'S RESPONSE:  See response to No. 4, below.

4.      The proposed budget consisted of:

i.      $75 per month for 5.66 hours for transportation and 1 monthly
cleaning of Plaintiff's apartment;

ii.      $1,239 for 59 hours of PAS service (payable at $21 / hour) from
Kansas Focus, a vendor of specialized services for disabled individuals;
and,

iii.      The remaining PAS hours of the assessment were proposed to be
handled by Kansas Focus using telephone, computer, and similar
communications methods to provide cuing and prompting to the Plaintiff
to do his ADL's and IADL's instead of having a human personal attendant
present.

PLAINTIFF'S RESPONSE:  This statement is controverted because this
statement is not supported by any attached exhibits or even by the
purported declarations. However, see Plaintiff's Additional Statement of
Uncontroverted Fact No. 37.  Exhibit 7 to Exhibit A, ¶ 92, the Declaration
of Michael Belancio, is the current budget which shows a history of all
previous budgets.  There is no budget listed for 2016 and Plaintiff is unable
to find one.  That history is set forth below:

| History | Beginning Budget Period | | Ending Budget Period | |
|---|---|---|---|---|
| Examples: Initial, annual, or revised assessment | Always the 1st of month | 9/1/2017 | Always the last day of month | 8/31/2018 |
| Initial Start | | 6/1/2014 | | 5/31/2015 |
| Revision-Change Work Transportation | | 12/1/2014 | | 9/30/2015 |
| Revision-Change Work Transportation | | 10/1/2015 | | 7/31/2017 |
| Revision-Change Work Transportation | | 8/1/2017 | | 5/31/2018 |
| Revision-Change Work Transportation | | 2/1/2018 | | 5/31/2018 |
| Revision-VR Closing | | 4/1/2018 | | 5/31/2018 |
| Revision-Change to Self-Directed | | 5/1/2018 | | 5/31/2018 |
| | | | | |

5.       On May 13, 2015, Ms. Marney rejected the proposed budget noting that the proposed budget spent 100% of the allocated monies for approximately 59% of the assessed PAS hours supposedly needed by the Plaintiff.  Ms. Marney rejected the proposed budget since it provided fewer hours than the assessed need.

> PLAINTIFF'S RESPONSE:  This statement is controverted because this statement is not supported by any attached exhibits to Defendant's Motion for Summary Judgment or Memorandum, or even by the purported declarations. However, see Plaintiff's Additional Statement of Uncontroverted Fact No. 38.

6.       Ms. Marney used a 70% utilization of hours as a floor to determine the denial.  Specifically, Ms. Marney looked to see if, at least, 70% of the assessed hours of PAS need were being met by the proposed budget. If the utilization was below the 70% floor, she did not accept the budget.

> PLAINTIFF'S RESPONSE:  This statement is controverted because this statement is not supported by any attached exhibits to Defendant's Motion for Summary Judgment or Memorandum, or even by the purported declarations. However, see Plaintiff's Additional Statement of Uncontroverted Fact No. 38.

7.     On or about June 1, 2015, Plaintiff requested an administrative hearing from the Kansas Office of Administrative Hearings (OAH) to contest Ms. Marney's decision.  OAH assigned the matter Case No. 15 M 0628 WK.

> PLAINTIFF'S RESPONSE:  This statement is controverted because this statement is not supported by any attached exhibits to Defendant's Motion for Summary Judgment or Memorandum, or even by the purported declarations. However, see Plaintiff's Additional Statement of Uncontroverted Fact No. 40.

8.     For budgets submitted in 2015 for 2016, there were 14 budgets (out of 285) where the participant paid the PAS attendant or the agency who provided the PAS attendant $17 to $21 per hour.  The Plaintiff's budget was the only one rejected. See Declaration of Ms. Marney attached Exhibit B.

> PLAINTIFF'S RESPONSE:  This statement is controverted because it is not supported by a proper declaration.  It is also controverted because it is not supported by a legible exhibit.   However, see Plaintiff's Additional Statement of Uncontroverted Fact No. 41.

9.     After an extensive administrative hearing process that included discovery, on July 6, 2017, the State Appeals Committee, the designee of the KDHE Secretary for determining the final agency decision in Kansas Medicaid administrative cases, issued its "Final Order" sustaining the decisions of Ms. Marney and an administrative law judge who had sustained Ms. Marney's decision.

> PLAINTIFF'S RESPONSE:  This statement is controverted because this statement is not supported by any attached exhibits to Defendant's Motion for

Summary Judgment or Memorandum, or even by the purported declarations.
However, see Plaintiff's Additional Statement of Uncontroverted Fact No. 42.

7.      On July 26, 2017, Plaintiff requested the Johnson County (Kansas) District
Court to judicially review KDHE's final agency order to determine if it had complied
with applicable laws and was not arbitrary and capricious.  See Johnson County
(Kansas) District Court Case No. 17-CV-04204. A copy of the agency's official record for
the administrative case was filed with the Johnson County Court.

> PLAINTIFF'S RESPONSE:  This statement is controverted because this
> statement is not supported by any attached exhibits to Defendant's Motion for
> Summary Judgment or Memorandum, or even by the purported declarations.
> However, see Plaintiff's Additional Statement of Uncontroverted Fact No. 43.

8.      On approximately April 26, 2018, Plaintiff proposed a WORK budget
effective on May 1, 2018 that complied with the 70% utilization rate. It was accepted by
the WORK program.  See Declaration of Ms. Marney attached Exhibit C.

> PLAINTIFF'S RESPONSE:  This statement is controverted because this
> statement is not supported by any attached exhibits to Defendant's Motion for
> Summary Judgment or Memorandum, or even by the purported declarations.
> However, see Plaintiff's Additional Statement of Uncontroverted Fact No. 44.

9.      The main difference between the earlier proposed budgets and the May 1,
2018 budget was the change from agency direction of the personal care attendants to
Mr. Belancio's self-direction of the personal care attendants.  Specifically, Mr. Belancio
proposed to self-direct (which can be done with the assistance of Mr. Belancio's
attorneys-in-fact) his personal care attendant services and pay a billable rate of $17.73

per hour.  After payment of a financial management fee (for a company hired by WORK
to determine and withhold FICA and other employment taxes and issue a check to the
personal care attendant) was included within the billable rate.

> PLAINTIFF'S RESPONSE:  This statement is controverted because this
> statement is not supported by any attached exhibits to Defendant's Motion for
> Summary Judgment or Memorandum, or even by the purported declarations,
> although it does state a correct summary of the events that occurred.

10.    The billable rate for private agency direction of the personal care attendant
instead of the agency direction billable rate of $21.00 per hour.

> PLAINTIFF'S RESPONSE:  The Plaintiff is unable to respond to this statement
> because it is an incomplete sentence and with no context, makes no sense.  There
> is no reference to the record.

11.    On June 6, 2018, the Johnson County (Kansas) District Court granted an
agreed order dismissing the case noted in ¶ 7 above.  See Exh. D.

> PLAINTIFF'S RESPONSE:  Defendant's Exhibit D is the purported declaration of
> Mary Ellen O'Brien Wright and does not support this fact.  However, see
> Plaintiff's Additional Statement of Uncontroverted Fact No. 43.

### 5.    Plaintiff's Statements of Uncontroverted Facts

Defendant's Statements of Uncontroverted Facts are incorrectly numbered and there
are actually 14 statements.  In order to avoid confusion, Plaintiff's Statements of
Uncontroverted Facts start with Number 15.

15. The Plaintiff Thomas Belancio ("Tom") is a citizen of the United States and resides in Johnson County, Kansas.  He is a qualified person with a disability as defined by the Rehabilitation Act of 1973 (29 U.S.C. 705(20)) and the Americans with Disabilities Act (42 U.S.C. 12102(2)) in that he has continuing conditions which include Autistic Spectrum Disorder (ASD), Borderline IQ, cerebral palsy, epilepsy and seizure disorders, Type II Diabetes, high cholesterol, depression and psoriasis, which are physical and mental impairments which substantially limit one or more of his major life activities; has a record of having such an impairment; and is regarded as having such an impairment.  (Exh. A, ¶ 4, Michael Belancio Declaration)

16. Tom has developmental disabilities.  He has not been declared incompetent, but his brother Michael L. Belancio is acting as his surrogate through a Power of Attorney.  Michael L. Belancio is an attorney at law, he is Tom's attorney in fact, his representative for the Kansas WORK program, and his representative payee for purposes of Social Security.  (Exh. A, ¶¶ 26, 27, 28, Michael Belancio Declaration)

17. Thomas Belancio was initially assessed on April 23, 2014, as needing 91.97 monthly PAS hours for a monthly allocation of $1,182.00 for the period 6/1/2014 through 5/31/2015.  ($1,218.59 less a 3% discount for an agency-directed budget.)  The assessment called for 91.97 hours per month.  (Exh. B, 5/7/14 Budget)

18. His approved budget provided for $50.00 to the Mission Project for transportation, $35.00 for Lea Johnson for housekeeping, and $1,092.00 to

Kansas Focus for 52 hours at $21.00 per hour for personal services. The budget utilized 56.54% of the assessed hours. (Exh. B)

19. While generally providers are allowed $13.25 per hour, the Plaintiff was allowed to pay Kansas Focus $21.00 per hour because of its expertise in dealing with persons who have the disabilities that Thomas Belancio has, and its ability to accomplish more than unskilled workers in fewer hours. (Exh. B)

20. Thomas Belancio was re-assessed on April 23, 2015, as needing 102.4 monthly personal assistance services (PAS) hours. This was an increase from his 2014 assessment of 91.97 hours. His 2015 allocation, after applying the WORK computation formula, was $1,316.00 per month. Of this amount, $1,239.00 is for 59 hours at $21.00 per hour payable to Kansas Focus. (Exh. C)

21. His proposed 2015 budget utilized 57.6% of the assessed hours for Kansas Focus. (Exh. C)

22. In September, 2016, the Defendant Marney advised that WORK "needed to have a schedule if the percentage falls below 80% and if the percentage falls below 70% the budget is not approvable. This way as long as a member is getting 70% of their assessed hours we can approve the budget as long as there is a schedule that reflect all the member's needs are being met." (Exh. D, Email from Marney, 9/8/16)

23. This "need" is not published in any document, other than an email from Marney to Wright dated May 7, 2015, asking if it should be included in the Program Manual, and neither the Plaintiff nor his representative were aware of it until after May 13, 2015. (Exhibit E, Email Marney to Wright, 5/7/15)

24. A schedule was provided to the Defendants by the Plaintiff demonstrating how all the member's needs are being met.  (Exh. F, Tom's Schedule of Services)

25. On May 7, 2015, Michael Belancio, on behalf of Thomas Belancio, wrote a letter to Ms. Marney requesting a modification in the so-called practice of refusing to approve a budget that utilized less than 70% of the hours, even though all of the allocated funds were utilized.  Michael Belancio also offered to come to Topeka from Kansas City—an attempt at the "interactive process"—to meet with Ms. Marney.  The offer was ignored.  (Exhibit 3 to Exhibit A, ¶ 82, Exh. 3, Michael Belancio Declaration)

26.  On May 13, 2015, Ms. Marney and Ms. Wright rejected the Plaintiff's proposed budget.  (Exhibit 9 to Exhibit A, ¶ 110, Michael Belancio Declaration)

27. On May 13, 2015, following that rejection, Michael Belancio again wrote to Ms. Marney requesting reasonable accommodations by modifying the practice of automatically rejecting the budget.  (Exhibit 4 to Exhibit A,  ¶ 82, Michael Belancio Declaration)

28. All of the professionals who met for Tom's review in 2015 found his program to be working. Present at the meeting were: Lindsey Wurtz, LBSW Eligibility & Options Specialist for Johnson County; Andrea Dyche from United Healthcare, the MCO, Rita Patience, Tom's ILC (Independent Living Counselor) for Working Healthy, Tom for the first part, and Michael Belancio.  (Exhibit A, ¶ 35, Michael Belancio Declaration)

29. The Plaintiff did not give the Defendants the authority to abuse their discretion, make arbitrary or capricious decisions, or violate the Americans with Disabilities

Act or the Rehabilitation Act of 1973.  (Exhibit A, ¶ 119, Michael Belancio Declaration.)

30. An appeal to the Office of Administrative Hearings was timely filed and on May January 18, 2017, the Administrative Law Judge issued his Initial Order affirming the agency's actions rejecting the budget.  A Petition for Review was then timely filed before the Division of Health Care Finance (DHCF) State Appeals Committee, and on July 6, 2017, the DHCF State Appeals Committee issued its Final Order in which it affirmed the decision of the presiding officer and adopted, incorporated, and supplemented the Findings of Fact and Conclusions of Law issued in the Initial Order.  (Exhibit 12 to Exhibit A, ¶ 114, Michael Belancio Declaration)

31. Because there are no appropriate providers in the Kansas City area who are now willing to provide services for $21.00 per hour, the Plaintiff changed his program to self-directed rather than agency-directed and reduced the hourly pay so that the math would result in using 70% of the allocation and the budget would be approved, rather than $21.00 per hour which would result in less than 70% of the allocation which would result in a rejection of the budget.  (Exh. A, ¶ 90, Michael Belancio Declaration)  An initial proposed 2018 budget which resulted in 69% of the allocation was rejected.  (Exhibit. A., ¶¶ 91, 92, Michael Belancio Declaration)

32. The going rate for personal care assistants in the Kansas City area who are skilled enough to assist Tom is around $24.00 per hour.  (Exhibit A, ¶ 90, Michael Belancio Declaration.)

33. Tom Belancio needs agency-directed care.  He is not capable of self-directed care and Michael Belancio and his wife are unable to provide it on more than a temporary, stop-gap basis.  (Exhibit A, ¶¶ 80-87, Michael Belancio Declaration.)

**Selected Defendant's Statements of Uncontroverted Facts
With References to the Record
(Statements 34 through 44)**

34. On April 23, 2015, the Plaintiff was assessed as needing 102.4 monthly PAS hours;  (Exhibit 8 to Exhibit A, Michael Belancio Declaration)

35. Plaintiff has signed forms consenting to the WORK regulatory and policy requirements.  (Exhibit G, Consumer Agreement Form, p. 9)

36.  Using the WORK allocation formula (of $13.25 times the number of monthly PAS hours assessed as needed by the Plaintiff) and after a payment of a financial management service fee, the Plaintiff was allocated $1,316.00 per month to purchase the PAS services for the 2016 budget year. (Exhibit C)

37.  There is no budget for 2016.  Because of the pending appeal to the Office of Administrative Hearings, the 2015 budget remained in effect.  Exhibit 7 to Exhibit A, ¶ 92, the Declaration of Michael Belancio, is the current budget which shows a history of all previous budgets.  There is no budget listed for 2016 and Plaintiff is unable to

find one.  That history is set forth below:

| History | Beginning Budget Period | | Ending Budget Period | |
|---|---|---|---|---|
| Examples: Initial, annual, or revised assessment | Always the 1st of month | 9/1/2017 | Always the last day of month | 8/31/2018 |
| Initial Start | | 6/1/2014 | | 5/31/2015 |
| Revision-Change Work Transportation | | 12/1/2014 | | 9/30/2015 |
| Revision-Change Work Transportation | | 10/1/2015 | | 7/31/2017 |
| Revision-Change Work Transportation | | 8/1/2017 | | 5/31/2018 |
| Revision-Change Work Transportation | | 2/1/2018 | | 5/31/2018 |
| Revision-VR Closing | | 4/1/2018 | | 5/31/2018 |
| Revision-Change to Self-Directed | | 5/1/2018 | | 5/31/2018 |
| | | | | |

38. On May 13, 2015, Ms. Marney rejected the proposed budget noting that the proposed budget spent 100% of the allocated monies for approximately 59% of the assessed PAS hours supposedly needed by the Plaintiff.  Ms. Marney rejected the proposed budget since it provided fewer hours than the assessed need. (Exhibit 9 to Exhibit A, ¶ 110, Michael Belancio Declaration)

39. Ms. Marney used a 70% utilization of hours as a floor to determine the denial. Specifically, Ms. Marney looked to see if, at least, 70% of the assessed hours of PAS need were being met by the proposed budget. If the utilization was below the 70% floor, she did not accept the budget. (Exhibit 9 to Exhibit A, ¶ 110, Michael Belancio Declaration)

40. On or about June 1, 2015, Plaintiff requested an administrative hearing from the Kansas Office of Administrative Hearings (OAH) to contest Ms. Marney's decision.  (Exhibit 10 to Exhibit A, ¶ 112, Michael Belancio Declaration)

41. For budgets submitted in 2015 for 2016, there were 14 budgets where the participant paid the PAS attendant or the agency who provided the PAS attendant

$17 to $25 per hour.  The Plaintiff's budget was the only one rejected. (Exhibit 11 to Exhibit A, ¶ 113, Michael Belancio Declaration )

42. After an extensive administrative hearing process that included discovery, on July 6, 2017, the State Appeals Committee, the designee of the KDHE Secretary for determining the final agency decision in Kansas Medicaid administrative cases, issued its "Final Order" sustaining the decisions of Ms. Marney and an administrative law judge who had sustained Ms. Marney's decision.  (Exhibit 12 to Exhibit A, ¶ 114, Michael Belancio Declaration)

43. On July 26, 2017, Plaintiff requested the Johnson County (Kansas) District Court to judicially review KDHE's final agency order to determine if it had complied with applicable laws and was not arbitrary and capricious.  See Johnson County (Kansas) District Court Case No. 17-CV-04204. (Exhibit 13 to Exhibit A, ¶ 115, Michael Belancio Declaration)  This Petition was voluntarily dismissed on June 6, 2018.  (Exhibit 14 to Exhibit A, ¶ 118, M Belancio Declaration)

44. On approximately April 26, 2018, Plaintiff proposed a WORK budget effective on May 1, 2018, that complied with the 70% utilization rate. It was accepted by the WORK program. (Exhibit 7 to Exhibit A, ¶ 92, Michael Belancio Declaration)

45. The 70% minimum does not appear in the WORK Program Manual. (Exhibit I.)

46. On April 19, 2018, the Plaintiff sent an email to the Defendant attaching a proposed Journal Entry of Dismissal of the Johnson County District Court appeal. (Exhibit J.)

### III. Argument and Authorities

**A.      The case is not mooted by Plaintiff's May 1, 2018 WORK budget.**

In the case cited by the Defendant—*Knox v. SEIU, Local 1000*, 132 S. Ct. 2277, 2287, 567 U.S. 298, 183 L. Ed. 2d 281 (2012)—the Supreme Court held:

> "A case becomes moot only when it is impossible for a court to grant " ' "any effectual relief whatever" to the prevailing party.' *Erie v. Pap's A. M., 529 U.S. 277, 287, 120 S. Ct. 1382, 146 L. Ed. 2d 265 (2000)* (quoting *Church of Scientology of Cal. v. United States, 506 U.S. 9, 12, 113 S. Ct. 447, 121 L. Ed. 2d 313 (1992)*, in turn quoting *Mills v. Green, 159 U.S. 651, 653, 16 S. Ct. 132, 40 L. Ed. 293 (1895))*. "[A]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Ellis v. Railway Clerks, 466 U.S. 435, 442, 104 S. Ct. 1883, 80 L. Ed. 2d 428 (1984).*"

Dismissal of the appeal does nothing to change the unwritten policy of the Defendants. If the Plaintiff chooses to go back to an agency-directed budget, he will still have to comply with the 70% requirement. This is demonstrated by the Defendant's refusal to approve a 69% budget (SOF No. 33) which occurred on April 19, 2018, *after* the Plaintiff had emailed a proposed Journal Entry of Dismissal to the Defendant. (SOF No. 46) The conclusion is that even though the Defendant was aware that the appeal had been dismissed, it *still* refused to approve a budget utilizing less than 70% of the assessed hours. The Plaintiff continues to be at risk for application of that "policy." The Court can still grant "effectual relief" to the Plaintiff, and the Plaintiff still has a "concrete interest" in the outcome of the litigation. The Defendant still imposes the 70% requirement on self-directed budgets as well as agency-directed budgets.

In her purported declaration—although Plaintiff objects to its consideration—Ms. Marney said:

6.   The May 1, 2018 proposed budget has an untilization rate of 70% and is approvable. Also, under the May 1, 2018 budget, the member is to get almost 4 additional hours of assistance from the previous budget.

7.   The May 1, 2018 budget has been accepted by the WORK program as it has a utilization rate of 70% or greater of assessed hours.

8.   The WORK program did not request this change. The change was made by Mr. Belancio and his representative.

Marney, in her purported declaration, failed to advise the court that immediately before approving the 70% budget, Ms. Marney had an email exchange with Rita Patience and Suzanne Hobbs (United HealthCare) concerning Tom Belancio's proposed 2018 budget. Ms. Patience, Tom's ILC, submitted numbers which Ms. Marney calculated would result in 69% of the hours being used. (Exhibit 5 to Exhibit A, Michael Belancio Declaration)

The email exchange (Exhibit 6 to Exhibit A, ¶ 91, Michael Belancio Declaration) reads:

From: "Hobbs, Suzanne M"
To: "Sherri Marney [KDHE]"
Date: 04/02/2018 02:31:22 PM CDT
Subject: Secure Message from suzanne_hobbs@uhc.com

**Sherri…before I sign this…any questions?**

Suzanne Hobbs, LBSW I Sr. Clinical Program Manager (WORK and FE Waiver)

Ms. Marney responded:

"From: "Sherri Marney [KDHE]"
To: "Hobbs, Suzanne M" , "'Rita Patience (rpatience1@comcast.net)'"
Date: April 3, 2018 at 10:51 AM
Subject: T Belancio

**Since Mr. Belancio is switching to self-direct I need the budget services schedule done.**

**Also, he is so close to being in compliance with WORK policy, this budget is at 69%. Is there any way this can be tweaked so the budget percentage is 70%? If the PCA is paid $15.75 = $17.73 the member can get 50.25 hours and the budget will be at 70%.**

**Please let me know if you have any questions or concerns.**

**Thank you**

Sherri Marney, WORK Program Manager"

Rita Patience then forwarded the emails to Michael Belancio with the following note:

> "That is what I was afraid of.  With added the employment supports in, it took it under the 70%.  We will have to drop the wages a bit in order to get this to get back to 70% and I will have to do a schedule.  If you can give me permission to do this, I will complete the paperwork from this end and send you the change of wages information to have Ron and Kendra sign.  Rita"

Following this, the numbers were "tweaked" and the 70% budget was submitted and approved.  (Exhibit 7 to Exhibit A, ¶ 92, Michael Belancio Declaration)

The Plaintiff modified his budget because there were no longer any agency alternatives at the price the Defendant was willing to pay and he had no choice but to change his program from agency-directed to self-directed.  This placed the burden on his brother and sister-in-law when it should be on the program designed to assist the Plaintiff.  (Michael Belancio Declaration, Exh. A, ¶ 82).  It is Tom's intent to switch to an agency-directed program.  Agency care is a major component of Tom's strategic plan for sustainability and independence.

## B.    The "driver" for Ms. Marney's review is not relevant.

The Defendant again argues that the discrimination is not due to a disability and that the First Amended Complaint states no ADA claim since it does not identify which of the Plaintiff's disabilities was used by the Defendants (sic) to make their (sic) decisions in this matter.  Once again, the Defendant argues that the First Amended Complaint should be "dismissed for failure to state a claim."  (Dkt. 38, p. 14-16)

This issue was resolved by the Court in its Memorandum and Order by noting that a failure to provide a reasonable modification under the ADA constitutes discrimination in and of itself. *Tennessee v. Lane*, 541 U.S. 509, 537 (2004)

> "Here, Plaintiff relies on the third method of establishing a discrimination claim—failure to make a reasonable modification. Under Title II of the ADA, "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." (Footnoted citations omitted.)  (Dkt. 34, p. 11)

> ...

> Plaintiff has adequately pleaded a cause of action under Title II of the ADA. First, Plaintiff alleges that he is a qualified individual within the meaning of the ADA.31 Second, Plaintiff alleges that Defendants denied him the right to participate in or obtain benefits provided by a public entity through the Kansas WORK program.32 And third, Plaintiff alleges that his exclusion and denial of benefits under the WORK program was "solely by reason of his disability." He alleges Defendants discriminated against him by failing to make or even consider a reasonable modification to the KDHE's practice of not authorizing budgets utilizing less than 70% of the assessed hours."  (Footnoted citations omitted.)(Dkt. 34, p. 12)

## C.    K.A.R. 129-6-84.

The Defendant again argues that K.A.R. 129-6-84(c) permits it to impose a 70% minimum because the Defendant has agreed to the policies of the WORK program.  The regulation reads:

> "(c) Each individual's participation in WORK shall be based on the individual's voluntary acceptance of and agreement with the regulatory and policy requirements of the program *in accordance with a participation agreement*."

The "participation agreement," reads:

> "Consumers are responsible for complying with WORK program policies and procedures *as laid out in the WORK Program Manual*."

Simply put, the 70% minimum does not appear in the WORK Program Manual.

The final provision of the document concerns Civil Rights:

"No person shall, on the grounds of race, color, national origin, age, disability, religion, or sex, be excluded from participation in, be denied the benefits of or be subject to discrimination under any programs or activity of the Department for Children and Families or Kansas Department of Health and Environment."

Further—and more significantly—the Court held in its Memorandum and Order:

"Defendants' final argument for dismissal of Plaintiff's claims requests dismissal because Defendants have been delegated final authority of the approval of a participant's budget under 42 C.F.R. § 441.470 and because Plaintiff signed a consent agreeing that the KDHE has the final authority to approve a WORK budget. In essence, Defendants argue that when it comes to approving a participant's budget in the WORK program, Defendants have complete discretion to do as they please, without regard to civil rights laws.

Nothing in 42 C.F.R. § 441.470 exempts Defendants from complying with other applicable federal laws, including the ADA and the Rehabilitation Act. Thus, while Defendants may have final authority over the approval of a budget, they may not exercise their discretion in a manner that violates federal civil rights laws. Further, that Plaintiff signed a consent agreeing that the KDHE has final authority for approving WORK budgets does not require dismissal of this case. Not only does this argument again improperly introduce facts not contained in Plaintiff's First Amended Complaint, but it also asks the Court to hold that Plaintiff prospectively waived his rights to be free from discrimination under the ADA and Rehabilitation Act. Defendants provide no authority for this result, and while waivers of federal civil rights may be enforceable in certain situations, such waivers are disfavored and analyzed under the specific circumstances presented— an inquiry improper on the record before the Court."  (Dkt. 38, p. 18-19)

The Defendant has not provided any authority in its Memorandum to support its

argument.


**D.    The requested modification is required and is reasonable.**

The Americans with Disabilities Act (42 U.S.C. § 12101 *et seq*) prohibits

discrimination against qualified persons with disabilities.

The Plaintiff is a "qualified individual with a disability"—"an individual who, with

or without reasonable modifications to rules, policies, or practices, the removal of

architectural, communication, or transportation barriers, or the provision of auxiliary

aids and services, meets the essential eligibility requirements for the receipt of services

or the participation in programs or activities provided by a public entity." 42 U.S.C. §

12131(2)

42 U.S.C. § 12132 provides:

"Subject to the provisions of this subchapter, no qualified individual with a
disability shall, by reason of such disability, be excluded from participation in or
be denied the benefits of services, programs, or activities of a public entity, or be
subjected to discrimination by any such entity."

Regulations adopted by the attorney general prohibit public entities from

discriminating against persons with disabilities.

"28 C.F.R. § 35.130 General prohibitions against discrimination.
(a) No qualified individual with a disability shall, on the basis of disability, be
excluded from participation in or be denied the benefits of the services,
programs, or activities of a public entity, or be subjected to discrimination by any
public entity.

(7) A public entity shall make reasonable modifications in policies,
practices, or procedures when the modifications are necessary to avoid
discrimination on the basis of disability, unless the public entity can
demonstrate that making the modifications would fundamentally alter the
nature of the service, program, or activity."

The Defendant has discriminated against the Plaintiff by refusing to modify its

policy—an unwritten policy, at that—which requires rejection of a WORK budget that

utilizes less than 70% of the hours assessed, even where skilled workers are required

and the cost to the state is substantially the same for skilled workers to do the same

work at a higher rate in less time than an unskilled worker.

Indeed, the Defendant has assured its consumers/members in Exhibit G that it

will not discriminate:

"No person shall, on the grounds of race, color, national origin, age, disability,
religion, or sex, be excluded from participation in, be denied the benefits of or be
subject to discrimination under any programs or activity of the Department for
Children and Families or Kansas Department of Health and Environment."

Again, however, the Defendant argues that "the true circumstances are that the Kansas Medicaid program has agreed to follow applicable federal Medicaid statutes and regulations in administering its state Medicaid program." (Dkt. 38, p. 17-18)  It once again contends that 42 C.F.R. 441.464(a)(1), 42 C.F.R. 441.466(b), and 42 C.F.R. 441.470 control the decision.

And again, this Court disposed of this argument:

"b. The federal Medicaid regulations do not impose the requirements alleged by Defendants.

"Much of Defendants' brief focuses on their claim that Plaintiff's proposed budget violates federal regulations. Defendants cite several regulations in support of this assertion, including 42 C.F.R. §§ 441.464(a)(1), 441.466(b), and 441.470, and claim that the KDHE's policies stem from these controlling regulations. According to Defendants, Plaintiff's proposed budget and request for relief in this action would result in a violation of these regulations. Defendants have failed to identify the language in the cited regulations, or any interpretation thereof, that requires the result advanced by Defendants." (Dkt. 34, p. 14.)

The Court then discussed each of the regulations and concluded:

"Nothing in any of the federal regulations cited by Defendants required Defendants to reject Plaintiff's proposed budget or refuse to consider his request for a reasonable modification. Thus, while the KDHE's unwritten policy may be based on its interpretation of these regulations, it is not mandated by the terms of these regulations. Defendants direct the Court to no rule or regulation prohibiting Defendants from authorizing Plaintiff's proposed budget. Accordingly, the Court rejects Defendants' arguments that authorizing Plaintiff's proposed budget at the proposed utilization rate violates federal Medicaid regulations and all arguments premised thereon." (Dkt. 34, p. 17.)

A more reasonable approach *consistent with the SPA and WORK Program Manual* is to utilize the actual hours required at an increased rate per hour.

The State Plan Amendment (SPA) is the agreement between the State of Kansas and the Federal Government which establishes the WORK (Working Healthy) Program. The SPA, effective 01/01/07, required the Defendant to describe the benefits available

25

and assure that the "State will inform each individual of this information." The State

responded in part with the following description which provides much flexibility:

> **"Participants may self-direct their care, or may choose a representative to direct their care on their behalf.**
> ...
>
> **The written services plan will be based on the assessment.** The written services plan will be developed in a person centered process and will include the services, and supports for those services, as prescribed by the assessment. ... **The written service plan will build upon the individual's capacity to engage in activities that promote community life and employment, and respect the individual's preferences, choices, and abilities.** The written service plan development will involve family, friends, and professionals, as desired by the participant. ...
>
> **The amount of funds allocated for a participant's written services plan will be based on the assessment and the written service plan. A methodology will be used to determine the amount of funds allocated based on valid and reliable cost data ... .**

(Emphasis added)(Exhibit H, SPA, Page 3)

In the *WORK Provider Manual* (Exhibit I) there is a lengthy section beginning at

page 25:

> **PAYMENT FOR SERVICES**.
>
> ## 1. PERSONAL SERVICES
>
> ### f. Individualized Budget
>
> "... Consumers have the flexibility to pay attendants different rates,
>
> e.g., to pay an attendant at a higher rate to provide personal care, such as
>
> bathing, than an attendant who does laundry and cooking. Consumers also
>
> have the flexibility to purchase their services in alternative ways, e.g., pay a
>
> neighbor to mow the lawn. ... " (Page 29)

Tom Belancio has exercised this flexibility by paying his attendants at Kansas

Focus the rate of $21.00 per hour. And, he is not alone.

26

There are 14 consumers/members in the WORK program who have had hourly rates approved that range from $17.00 per hour to $25.00 per hour.  (Plaintiff's Additional Statement of Fact No. 36)  Although the spreadsheet itself is too large to print legibly (See Exhibit B to Defendant's Memorandum), excerpts from that spreadsheet explain the higher rate payments.  Most notable are the 7 members (including Plaintiff) who were approved to pay their personal assistants $25 per hour for employment support because "**employment supports are more costly per hour.**"

| Member No. | Description |
|---|---|
| 1 | This line is used only for column headings. |
| 2 | • Personal Assistance Services: assessed as needing 116.91hrs per month = $1549.05 per month. **Member is using 89.25hrs x $17 per hour = $1517.25.** Not a cost savings due to reduced hours. |
| 3 | • Personal Assistance Services: assessed as needing 9.33hrs per week x 4.33 = 40.39 hrs per month = $535.16 per month. **Member is using 37.5hrs x $21 per hour = $787.50.** Not a cost savings. |
| 4 | • Employment Support: assessed as needing .92hrs per week x 4.33 = 3.98hrs per month = $52.73 per month. **Member is using 3.5hrs per month x $25 per hour = $87.50. Not a cost savings. However, employment supports are more costly per hour.**<br><br>• Personal Assistance Services: assessed as needing 20.21hrs per week x 4.33 = 87.5hrs per month = $1159.37 per month. **Member is using 71hrs x $21 per hour = $1491.** Not a cost savings. |
| 5 | • Personal Assistance Services: assessed as needing 17.99hrs per week x 4.33 = 77.89hrs per month = $1032.04 per month. **Member is using 62hrs x $20 per hour = $1240.** Not a cost savings. |

| Member No. | Description |
|---|---|
| 6 | • Employment Support: assessed as needing 1.25hrs per week x 4.33 = 5.41hrs per month = $71.68 per month. **Member is using 3hrs per month x $25 per hour = $75. Not a cost savings but not a big deficit. However, employment supports are more costly per hour.**<br><br>• Personal Assistance Services: assessed as needing 9.91hrs per week x 4.33 = 42.91hrs per month = $568.55 per month. **Member is using 19hrs x $21 per hour = $399**. Not a cost savings. |
| 7 | • Employment Support: assessed as needing .92hrs per week x 4.33 = 3.94hrs per month = $52.20 per month. **Member is using 3hrs per month x $23 per hour = $69. Not a cost savings. However, employment supports are more costly per hour.**<br><br>• Personal Assistance Services: assessed as needing 9.87hrs per week x 4.33 = 42.73hrs per month = $566.17 per month. **Member is using 34.75hrs x $21 per hour = $729.75**. Not a cost savings. |
| 8 | • Personal Assistance Services: assessed as needing 25.92hrs per week x 4.33 = 112.23hrs per month = $1487.04 per month. **Member is using 76.5hrs x $18 per hour = $1377**. Not a cost savings due to reduced hours. |
| 9 | • Employment Support: assessed as needing .75hrs per week x 4.33 = 3.24hrs per month = $42.93 per month. **Member is using 3hrs per month x $23 per hour = $69.** Not a cost savings. However, employment supports are more costly per hour.<br><br>• Personal Assistance Services: assessed as needing 7.57hrs per week x 4.33 = 32.77hrs per month = $434.20 per month. **Member is using 43.5hrs x $21 per hour = $913.50.** Not a cost savings. |

| Member No. | Description |
|---|---|
| 10 | • Employment Support: assessed as needing .25hrs per week x 4.33 = 1.08hrs per month = $14.31 per month. **Member is using 2hrs per month x $23 per hour = $46. Not a cost savings. However, employment supports are more costly per hour.**<br><br>• Personal Assistance Services: assessed as needing 18.97hrs per week x 4.33 = 82.14hrs per month = $1088.35 per month. **Member is using 12hrs x $21 per hour = $252 Agency-direct.** Member is also using self-direct 74hrs x $11 = $814. Total personal assistance services being used 12hrs + 74hrs = 86hrs, $252 + $814 = $1066 per month. Cost savings of $22.35. |
| 11 | • Employment Support: assessed as needing 1.94hrs per week x 4.33 = 8.31hrs per month = $110.10 per month. **Member is using 6hrs per month x $23 per hour = $138**. Not a cost savings. However, employment supports are more costly per hour.<br><br>• Personal Assistance Services: assessed as needing 21.05hrs per week x 4.33 = 91.14hrs per month = $1207.60 per month. **Member is using 39hrs x $21 per hour = $819 Agency-direct.** Member is also using self-direct 33hrs x $11.26 = $371.58. Total personal assistance services being used 39hrs + 33hrs = 72hrs, $819 + $371.58 = $1190.58 per month. Not a cost savings of $17.02 because of reduced hours. |
| 12 | • Personal Assistance Services: assessed as needing 25.64hrs per week x 4.33 = 111.02hrs per month = $1471.01 per month. **Member is using 75.5hrs x $18 per hour = $1359.** Not a cost saving of $111.01 due to reduced hours. |
| 13<br><br>(Plaintiff) | • Employment Support: assessed as needing .5hrs per week x 4.33 = 2.16hrs per month = $28.62 per month. **Member is using 2hrs per month x $25 per hour = $50. Not a cost savings. However, employment supports are more costly per hour.**<br><br>• **This budget balances at 65%. Since this budget falls below 70% it is not approvable due to the severe reduction of assessed hours.** |
| 14 | • Personal Assistance Services: assessed as needing 43.7hrs per week x 4.33 = 189.22hrs per month = $2507.16 per month. **Member is using 133hrs x $18 per hour = $2394**. Not a cost saving of $113.16 due to reduced hours. |

| Member No. | Description |
|---|---|
| 15 | • Personal Assistance Services: assessed as needing 11.83hrs per week x 4.33 = 51.22hrs per month = $678.66 per month. **Member is using 28hrs x $21 per hour = $588.** Not a cost saving of $90.66 due to reduced hours. |

By the same token, workers skilled in providing personal assistance services for consumers with autism are "more costly per hour."

### IV.    REQUESTED RELIEF

**A.  Injunction**

The Plaintiff seeks relief by way of an injunction preventing the Defendant from applying an arbitrary 70% minimum to the percentage of assessed hours utilized in arriving at an approved budget.

A reasonable method of crafting relief that accomplishes this objective is by directing the Defendant to create (or enjoining the Defendant from refusing to create) a budget that utilizes the *actual* hours for skilled services and the *actual* rate per hour in the community for those skilled services.  For example, instead of using an assessment of 100 hours at $13.25 per hour to yield a budget of $1,325.00 and then reducing it to 63.09 hours at $21.00 per hour to yield a budget of $1,325.00, the defendant should accept the accurate assessment of 63.09 hours (or whatever the actual assessment yields) and use an hourly rate of $21.00 (or whatever the going rate in the community is).

This is consistent with the *WORK Provider Manual* and the SPA.  Utilizing language from the SPA:

a.      The plan would be built upon Tom's capacity to engage in activities that promote community life and employment, and respect the individual's preferences, choices, *and abilities*; and,

b.      The amount of funds allocated for Tom's plan would be based on the assessment.  A methodology will be used to determine the amount of funds allocated based on *valid and reliable cost data* which would be determined by a survey of available and appropriate skilled services in the Kansas City area.

The resulting budget may be more or less than his existing budget, but it would consider all of the relevant factors.

**B.      Attorney Fees**

28 C.F.R. provides:

"In any action or administrative proceeding commenced pursuant to the Act or this part, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs, and the United States shall be liable for the foregoing same as a private individual."

Plaintiff is entitled to his attorney fees, litigation expenses, and costs to be determined in a manner as directed by the Court.

## CONCLUSION

The Defendant has discriminated against the Plaintiff in violation of the

Americans with Disabilities Act and is entitled to relief.

Respectfully submitted,

DAVID P. CALVERT, P.A.

s/ David P. Calvert
David P. Calvert (#06628)
David P. Calvert, P.A.
532 N. Market
Wichita, KS 67214
Phone (316) 269-9055
Fax (316) 269-0440
Email  lawdpc@swbell.net

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 20th day of July, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Brian M. Vazquez
Health Care Finance Legal Group
Kansas Dept. of Health & Environment Ste. 560, Curtis State Office Bldg.
Topeka, KS 66612
Email: bvazquez@kdheks.gov
*Attorney for Defendant*

/s/ David P. Calvert
*Attorney for Plaintiff*