# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

THOMAS BELANCIO,

        *Plaintiff,*

  vs.

KANSAS DEPARTMENT OF HEALTH
AND ENVIRONMENT.

        *Defendant.*

Case No. 17-CV-1180-EFM

## MEMORANDUM AND ORDER

This case arises out of Defendant the Kansas Department of Health and Environment's denial of benefits to Plaintiff Thomas Belancio under the Kansas WORK program. Plaintiff alleges that Defendant violated Title II of the Americans with Disabilities Act of 1990 ("ADA") and the Rehabilitation Act of 1973 ("Rehabilitation Act") by failing to authorize a reasonable modification to a bright-line policy requiring the rejection of certain proposed budgets. This matter comes before the Court on the parties' cross-motions for summary judgment. For the reasons stated below, the Court denies Defendant's Motion for Summary Judgment (Doc. 37), and grants in part and denies in part Plaintiff's Motion for Summary Judgment (Doc. 44).

# I. Factual and Procedural Background

## A. Defendant's statement of uncontroverted facts

Motions for summary judgment filed in the District of Kansas must conform not only to the requirements stated in Fed. R. Civ. P. 56, but also to the requirements stated in D. Kan. Rule 56.1. Under Rule 56.1(a), a party moving for summary judgment must include in the memorandum or brief in support of the motion "a concise statement of material facts as to which the movant contends no genuine issue exists. The facts must be numbered and must refer with particularity to those portions of the record upon which movant relies." Further, under Rule 56.1(d), "[a]ll facts on which a motion or opposition is based must be presented by affidavit, declaration under penalty of perjury, and/or relevant portions of pleadings, depositions, answers to interrogatories, and responses to requests for admissions."[1]

In its statement of facts section, Defendant asks the Court to take judicial notice of an Agreed Stipulation filed in the state administrative hearing and state court case relating to the events at issue in this lawsuit.[2] It then identifies 14 allegedly uncontroverted facts. The first nine

---

[1] *See also* D. Kan. Rule 7.6(a)(2) (requiring "[a]ll briefs and memoranda filed with the court" to contain "a concise statement of the facts, with each statement of fact supported by reference to the record"); 28 U.S.C. § 1746 (requiring unsworn declarations to be "in substantially the following form . . . "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)").

[2] Defendant asserts that this Court may take judicial notice of the alleged facts contained in the Agreed Stipulation of facts, but the cases cited by Defendant do not support this assertion. As previously explained, the Court's power to take judicial notice of publicly-available court documents and matters of public record, is limited to "*facts* which are a matter of public record."[2] *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (quoting *Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000)) (emphasis added). Thus, while the Court may take judicial notice of the fact that administrative proceedings occurred or that certain documents are part of the public record, it cannot also take judicial notice of "the *truth* of matters asserted therein" simply because a document is part of the public record. *Id*. (quotation omitted) (emphasis added); *see also* 21B Fed. Prac. & Proc. Evid. § 5106.4 (2d ed.) ("A court could take judicial notice that a party made a statement in some document filed with the court, but not [that] the admission was true."). That the parties seemingly stipulated to a set of facts for purposes of the administrative hearing does not change the Court's analysis as parties frequently stipulate to matters for certain limited purposes. Further, the "stipulations" section of the March 30, 2018 Pretrial Order (Doc. 33), states: "**a**. The following

facts are numbered one through nine; the numbering then restarts at seven, and goes from seven to eleven. Only three of Defendant's uncontroverted facts include a citation to the record—paragraphs 8 (the first paragraph numbered 8), 8 (the second paragraph numbered 8), and 11. Defendant supports these paragraphs with citations to declarations signed by former defendants—one from Sherri Marney dated March 23, 2018, one from Marney dated June 8, 2018, and one from Mary Ellen O'Brien Wright dated November 21, 2017.[3] Neither Marney nor Wright signed the declarations under penalty of perjury; nor did either declarant swear to the truth of the matters asserted in their respective declarations.

Plaintiff requests that the Court disregard Defendant's statement of uncontroverted facts for failing to follow applicable federal and local rules, for failing to support its facts with citations to the record, and for inadequately supporting certain facts with declarations not signed under penalty of perjury. Defendant provides no reply to this portion of Plaintiff's response. Because Defendant has failed to comply with the rules regarding summary judgment motions outlined above,[4] the Court considers only the uncontested facts alleged by Plaintiff.

---

facts are stipulated: Parties have not agreed to a stipulation." The Court will not take judicial notice of the Agreed Stipulation attached by Defendant.

[3] The Court dismissed Marney and Wright from this lawsuit on May 18, 2018.

[4] In this Court's order denying Defendant's motion to dismiss based on the same arguments, the Court instructed Defendant that if it wished to pursue its arguments in the future that it "should file a dispositive motion that allows the Court to properly consider facts other than those contained in the pleadings—a motion for summary judgment, for example—and follow the Federal Rules of Civil Procedure and local rules governing such motions." Doc. 34, p. 18. Further, the Pretrial Order specifically instructs the parties to follow the summary-judgment guidelines available on the Court's website and includes a link to the guidelines. The guidelines echo the requirements stated above regarding supporting factual assertions and instruct the parties, in bold, to "**read carefully and follow Fed. R. Civ. P. 56, D. Kan. R. 56.1, and D. Kan. R. 7.1.**" Despite the Court's prior direction and the instructions in the Pretrial Order, Defendant failed to comply with the rules governing summary judgment motions and regarding the procedure for supporting alleged facts at this stage.

**B.      Plaintiff's statement of uncontroverted facts**[5]

Plaintiff is a qualified person with a disability as defined by the ADA and Rehabilitation. He has developmental disabilities and his continuing conditions include Autistic Spectrum Disorder, Borderline IQ, cerebral palsy, epilepsy and seizure disorders, Type II Diabetes, high cholesterol, depression, and psoriasis—these conditions are physical and mental impairments which substantially limit one or more of his major life activities. Plaintiff has not been declared incompetent, but his brother, Michael L. Belancio, acts as his surrogate through a power of attorney. Michael Belancio serves as Plaintiff's attorney in fact, his representative for the Kansas WORK program, and his representative payee for purposes of Social Security.

Plaintiff received an assessment for purposes of the WORK program on April 23, 2014, as needing 91.97 personal assistance services ("PAS") hours per month, resulting in a monthly allocation of $1,182 for the period beginning on June 1, 2014, and ending on May 31, 2015. Defendant approved Plaintiff's proposed budget, which allocated $50 for transportation, $35 for housekeeping, and $1,092 for 52 hours of personal services to be provided by Kansas Focus at $21 per hour. The budget utilized approximately 56% of the assessed PAS hours. Plaintiff was allowed to pay Kansas Focus $21 per hour because of its expertise in dealing with persons who have the same disabilities as Plaintiff, and its ability to accomplish more than unskilled workers in fewer hours.

Plaintiff received a re-assessment on April 23, 2015, which assessed Plaintiff as needing 102.4 PAS hours per month, resulting in a monthly allocation of $1,316 for the 2015 budget. Of

---

[5] The following facts are uncontroverted for purposes of summary judgment.

this amount, $1,239 accounted for 59 PAS hours at $21 per hour payable to Kansas Focus. This budget utilized approximately 57% of the assessed hours for Kansas Focus.

All of the professionals who met for Plaintiff's review in 2015 found his program to be working. Those present at the meeting included: Lindsey Wrutz, a LBSW Eligibility & Options Specialist for Johnson County, Andre Dyche with United Healthcare, the MCO,[6] Rita Patience, Plaintiff's Independent Living Counselor for Working Healthy, Plaintiff for part of the meeting, and Michael Belancio.

On May 13, 2015, Marney and Wright rejected Plaintiff's proposed budget. Marney used a 70% minimum utilization of PAS hours policy in denying the budget. Specifically, Marney looked to see if at least 70% of the assessed hours of PAS need were being met by the proposed budget, and if the utilization rate fell below the 70% floor, she did not accept the budget. This 70% utilization requirement does not appear in the WORK Program Manual or in any other document other than an email from Marney to Wright dated May 7, 2015, asking if the requirement should be included in the Program Manual.

On May 7, 2015, prior to the rejection of Plaintiff's proposed budget, Michael Belancio wrote a letter to Marney on behalf of Plaintiff requesting a modification in the practice of refusing to approve a budget that utilizes less than 70% of the hours. He offered to travel to Topeka to engage in the interactive process, but Marney ignored the offer. After the rejection, Michael Belancio again wrote to Marney requesting a reasonable accommodation by modifying the practice of automatically rejecting the budget.

---

[6] According to the WORK Program Manual, "MCO" stands for managed care organization.

Plaintiff filed an appeal with the Office of Administrative Hearings, which affirmed Defendant's decision, followed by a timely petition for review with the Division of Health Care Finance ("DHCF") State Appeals Committee. On July 6, 2017, the DHCF State Appeals Committee issued its final order affirming the decision. On July 26, 2017, Plaintiff requested the Johnson County District Court to review the KDHE's final agency order to determine if it had complied with applicable laws and was not arbitrary and capricious. The petition was voluntarily dismissed on June 6, 2018.

Because no appropriate providers in the Kansas City area are willing to provide services for $21 per hour,[7] in 2018 Plaintiff changed his program to self-directed, rather than agency-directed, and revised his proposed budget so that he would utilize 70% of the PAS hours. Defendant rejected an initial proposal which resulted in a 69% utilization rate. On approximately April 26, 2018, Plaintiff proposed a WORK budget to be effective May 1, 2018, that complied with the 70% utilization rate, and Defendant accepted the budget. While Plaintiff is currently utilizing self-directed care (through the assistance of Michael Belancio and his wife), he needs agency-directed care.

For budgets submitted in 2015 for 2016, 14 budgets included payments to PAS attendants or an agency at an hourly rate ranging from $17 to $25 per hour. Plaintiff's budget was the only budget rejected.

---

[7] The going rate for personal care assistants in the Kansas City area who are skilled enough to assist Tom is around $24 per hour.

## C.    Procedural background

Plaintiff filed this action on July 27, 2017, and filed his First Amended Complaint on October 31, 2017.  Plaintiff alleges that Defendant violated the ADA and Rehabilitation Act by failing to provide a reasonable modification to its practice of automatically denying a proposed budget that utilizes less than 70% of the assessed hours.  His First Amended Complaint sought a permanent injunction enjoining Defendant from enforcing its 70% utilization policy to automatically deny Plaintiff's proposed budget when it falls below the 70% utilization rate.  Defendant filed a motion to dismiss and the Court granted the request to dismiss the individually-named Defendants, but otherwise denied the motion.

The parties have now filed cross-motions for summary judgment.  Plaintiff asks that the Court enter summary judgment in his favor because the requested modification is both required and reasonable.  He argues that he satisfies the definition of a qualified individual with a disability and that Defendant discriminated against him by refusing to modify its unwritten policy that requires automatic rejection of a WORK budget that utilizes less than 70% of the hours assessed.  He asks that the Court issue an injunction (1) preventing Defendant from applying an arbitrary 70% minimum to the percentage of assessed hours utilized in arriving at an approved budget and (2) directing Defendant to adopt an alternate method of calculating benefits.  He also seeks his attorneys' fees, expenses, and costs.

Defendant argues that summary judgment in its favor is proper on Plaintiff's ADA and Rehabilitation Act claims because (1) this case is moot in light of Plaintiff's 2018 WORK budget, (2) Defendant did not have an obligation to provide a reasonable modification because it did not discriminate against Plaintiff due to a disability, (3) Plaintiff has not presented a reasonable

modification as the proposed modification would violate federal regulations, and (4) Plaintiff's proposed modification would work a fundamental alteration to the program.

## II. Legal Standard

Summary judgment is proper if the moving party demonstrates that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[8] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[9] "The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[10] If the movant carries its initial burden, the nonmoving party may not simply rest on its pleading, but must instead "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[11] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a

---

[8] Fed. R. Civ. P. 56(a).

[9] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[10] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citation omitted).

[11] *Id.* (citing Fed. R. Civ. P. 56(e)).

motion for summary judgment.[12]  The Court views all evidence and reasonable inferences in the light most favorable to the non-moving party.[13]

Although the parties in this case filed cross-motions for summary judgment, the legal standard remains the same.[14]  Each party retains the burden of establishing the lack of a genuine issue of material fact and entitlement to judgment as a matter of law.[15]  While courts generally consider each motion separately,[16] where the cross-motions overlap, as is frequently the case here, the Court may address the legal arguments together.[17]

### III.    Analysis

### A.    ADA and Rehabilitation Act failure to modify claims[18]

"Congress enacted the ADA in 1990 to remedy widespread discrimination against disabled individuals."[19]  To effectuate its broad mandate, "the ADA forbids discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public

---

[12] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citation omitted).

[13] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[14] *City of Shawnee v. Argonaut Ins. Co.*, 546 F. Supp. 2d 1163, 1172 (D. Kan. 2008).

[15] *United Wats, Inc. v. Cincinnati Ins. Co.*, 971 F. Supp. 1375, 1382 (D. Kan. 1997) (citing *Houghton v. Foremost Fin. Servs. Corp.*, 724 F.2d 112, 114 (10th Cir. 1983)).

[16] *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

[17] *Berges v. Standard Ins. Co.*, 704 F. Supp. 2d 1149, 1155 (D. Kan. 2010).

[18] Plaintiff's ADA and Rehabilitation Act claims appear premised on the same underlying facts.  Accordingly, since such claims are typically analyzed under the same legal standard and neither party argues otherwise, the Court will address the claims together for purposes of Defendant's Motion for Summary Judgment.  *See Cohon ex rel. Bass v. N.M. Dep't of Health*, 646 F.3d 717, 726 (10th Cir. 2011) ("Because neither party argues that the non-discrimination principles of the ADA and of the Rehabilitation Act require distinct analysis in this case, we will address them together.").  Plaintiff's Motion for Summary Judgment does not request judgment on his Rehabilitation Act claim; therefore, the Court does not consider whether Plaintiff has established the additional element required under the Rehabilitation Act to succeed on his claim.

[19] *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674 (2001).

services (Title II), and public accommodations (Title III)."[20]  Title II, at issue here, provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[21]  "The term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."[22]  The term "public entity" includes "any State or local government," and "any department, agency, special purpose district, or other instrumentality of a State or States or local government."[23]

Title II's prohibition against discrimination "applies to action that carries a discriminatory effect, regardless of the [entity's] motive or intent."[24]  Accordingly, Courts recognize "three ways to establish a discrimination claim: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation."[25]  To succeed on his Title II claim, Plaintiff must prove (1) that he "is a qualified individual with a disability;" (2) that he "was either excluded from participation in or denied the benefits of some public entity's services,

---

[20] *Id.* (citing 42 U.S.C. §§ 12111-12117; 42 U.S.C. §§ 12131-12165; 42 U.S.C. §§ 12181-12189)

[21] 42 U.S.C. § 12132.

[22] 42 U.S.C. § 12131(2).

[23] 42 U.S.C. § 12131(1).

[24] *Tyler v. City of Manhattan*, 857 F. Supp. 800, 817 (D. Kan. 1994) (citations omitted).

[25] *J.V. v. Albuquerque Pub. Schs.*, 813 F.3d 1289, 1295 (10th Cir. 2016) (citations omitted).

programs, or activities, or was otherwise discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination was by reason of [his] disability."[26]

The parties do not dispute that Plaintiff satisfies the first two elements of his claim—he is a qualified individual with a disability and Defendant, a public entity, denied Plaintiff benefits under its services, programs, or activities. Indeed, the uncontroverted facts establish that no genuine issue of material fact exists as to these elements. Instead, the parties disagree as to whether Plaintiff has satisfied the third element of his claim—that the denial of benefits was by reason of his disability. Plaintiff claims that Defendant discriminated against him by failing to make reasonable modifications to its practices and policies as applied to Plaintiff. Specifically, Plaintiff claims Defendant violated Title II of the ADA by denying Plaintiff's proposed budget because it did not comply with Defendant's unwritten 70% utilization policy and by refusing to grant Plaintiff's requested modification to the policy. Defendant argues that this case is moot, that it did not owe a duty to provide a reasonable modification, that the proposed modification is unreasonable, and that the proposed modification would work a fundamental alteration to the WORK program. Before analyzing the proposed modification, the Court will first analyze

---

[26] *Id*. (citation omitted). To succeed on his Rehabilitation Act claim, Plaintiff must prove an additional element—that the KDHE receives federal financial assistance. *See* 29 U.S.C. § 794(a). Defendant argues that Plaintiff abandoned this claim by not addressing it in his Motion for Summary Judgment. Plaintiff's response brief/motion for summary judgment notes that he is pursuing a Rehabilitation Act claim. The Court will not dismiss a claim on summary judgment if the moving party has not demonstrated that there is no issue as to any material fact. As addressed below, Plaintiff has established the first three elements of his Rehabilitation Act claim and neither party addresses the fourth element—federal financial assistance. Thus, while the Court does not grant Plaintiff's Motion for Summary Judgment as to his Rehabilitation Act (indeed, Plaintiff has not sought summary judgment on that claim), the Court will not dismiss the claim where all but one of the elements have been satisfied and neither party addresses the fourth element.

Defendant's arguments that, if successful, would obviate the need to reach the reasonable modification analysis.

1. *Defendant's summary judgment arguments that would preclude a reasonable modification analysis*

   a. Mootness

Article III requires "that a justiciable case or controversy must remain extant at all stages of review, not merely at the time the complaint is filed."[27] "Only when it is impossible for a court to grant any effectual relief whatever to the prevailing party" does a case become moot.[28] Defendant argues that Plaintiff's claims should be dismissed as moot in light of Plaintiff's May 1, 2018, WORK budget, which Defendant approved. Defendant asserts that Plaintiff "voluntarily" changed his budget from an agency-directed budget to a self-directed budget, that the new budget utilizes an attendant at the rate of $17.73 per hour, and that the new budget complies with the 70% utilization guideline.[29] Defendant argues that the change in Plaintiff's budget "would seem to indicate that there is no longer a dispute between the parties." The Court disagrees that Plaintiff's claims are moot.

Plaintiff seeks injunctive relief prohibiting Defendant from applying a policy applicable to budgets that he has proposed and alleges that he requires a reasonable modification of the policy given his specific disabilities. Defendant has relied on the 70% utilization guideline to deny Plaintiff's proposed budgets on at least two occasions, including in May 2018, and Plaintiff must

---

[27] *Decker v. Nw. Envtl. Defense Ctr.*, 568 U.S. 597, 609 (2013) (quotation omitted).

[28] *Id.* (quotation omitted).

[29] According to Defendant, "Plaintiff's WORK participation operated under the WORK budget approved in 2014 . . . due to 'continuation of benefits' provisions at 42 C.F.R. 431.230." This regulation sets forth requirements for maintaining services when an administrative hearing has been requested to challenge a denial. According to Plaintiff, the state administrative process ended in mid-2017.

seek approval of future budgets on a yearly basis (potentially more frequently). Further, Plaintiff notes that his current plan relies on his brother and sister-in-law, who are unable to provide the requisite support on more than a temporary, stop-gap basis. It is not impossible for the Court to grant effectual relief to Plaintiff if Plaintiff prevails on his claims, and his claims are not moot.

> b. No duty to provide reasonable modification

Defendant next argues that this Court need not reach the reasonable modification analysis because there has not been discrimination due to Plaintiff's disability—an alleged prerequisite to requiring a reasonable modification. Defendant's argument proceed as follows:

> [B]efore one can determine if a reasonable modification is necessary in a case, Defendant respectfully suggests the need to first find discrimination due to a disability. If there is no such discrimination due to Plaintiff's disability, there is really no need to progress to an analysis of a reasonable modification. . . . Facially, Plaintiff states no allegation in his First Amended Complaint that the Defendants discriminated against the Plaintiff due to his disabilities. His sole concern was over the use of a 70% utilization rate and Plaintiff's assertion that [the] 2015 proposed budget was a reasonable modification. However, as the uncontroverted facts demonstrate, the driver to Ms. Marney's decision to not accept Plaintiff's proposed 2015 budget was that Kansas Focus, the private agency directing the Plaintiff's personal care attendant services, spent nearly 100% of the allocated funds while providing less than 60% of the assessed personal care attendant services needed by the Plaintiff. A significant factor was Kansas Focus' billable rate of $21 per hour. As Ms. Marney indicated in her Declaration (see Exhibit B), there were 14 budgets with billable rates in the $17 to $21 range out of 285 budgets. She looked at those cases where the utilization rate for personal care attendant services were less than 80%. The person's disability had nothing to do with Ms. Marney's reviews. . . . Defendant suggests that there was no discrimination due to the Plaintiff's disability in this matter. This alone should be dispositive. Defendants submit that Plaintiff's First Amended Complaint states no ADA claim against the Defendants since it does not identify which of the Plaintiff's disabilities was used by the Defendants to make their decisions in this matter.

Defendant's argument—that before the Court can determine if a reasonable modification is necessary it must first find "discrimination due to a disability"—appears to conflate "discrimination" with "intentional discrimination" and ignore that failing to grant a reasonable

modification *is* a separate form of discrimination. Defendant argues that Ms. Marney's decisions in approving or denying proposed budgets had nothing to do with the person's disability. While this would be relevant if Plaintiff alleged that Defendant *intentionally* discriminated against him in denying his budget, this fact does not preclude a failure to provide a reasonable modification claim. Defendant's *intentions* in enforcing a policy to deny benefits do not preclude a reasonable modification claim.[30]

The Tenth Circuit recognizes three theories of discrimination available under Title II of the ADA.[31] An ADA discrimination claim may be premised on intentional discrimination, disparate impact, *or* the failure to provide a reasonable modification.[32] In enacting the ADA, Congress sought to eradicate various forms of discrimination, intentional and unintentional, and specifically noted "overprotective rules and policies" as just one of the "various forms of discrimination" that individuals with disabilities encounter.[33] Thus, Defendant's motivation or reason for denying Plaintiff's proposed budget is not dispositive. What is relevant is why Plaintiff needed a modification of the policy.

Here, Plaintiff seeks to utilize his authorized budget to obtain services from workers holding expertise in dealing with individuals having the same disabilities as him. He notes that while these providers cost more per hour, they also accomplish more per hour than unskilled

---

[30] *See Tyler*, 857 F. Supp. at 817.

[31] *Albuquerque Pub. Schs.*, 813 F.3d at 1295.

[32] *Id. See also Tennessee v. Lane*, 541 U.S. 509, 537 (2004) (J. Ginsberg, concurring) (recognizing that in enacting the ADA, Congress advanced " 'a more comprehensive view of the concept of discrimination,' one that embraced failures to provide 'reasonable accommodations' ") (quoting *Olmstead v. L.C.*, 527 U.S. 581, 598, 601 (1999)); *Albuquerque Pub. Schs.*, 813 F.3d at 1295 (recognizing that discrimination may be predicated on a "failure to make a reasonable accommodation") (citations omitted).

[33] *See* 42 U.S.C. § 12101(a).

workers, and thus, his needs are met without satisfying the 70% utilization policy. In other words, Plaintiff's claim is that due to his specific disabilities, unless he can utilize his budget to pay for skilled workers, he cannot obtain meaningful access to the WORK program's benefits. Plaintiff's requested modification relates directly to his disability and need to obtain services from workers with the requisite skills to address his disability-specific needs. Plaintiff alleges that his needs are met by a budget that utilizes less than 70% of the assessed PAS hours, and that Defendant must provide a reasonable accommodation by not automatically denying his proposed budget merely because it does not comply with the unwritten 70% utilization policy. Plaintiff need not show intentional discrimination.[34]

### 2. *Reasonable modification*

As noted above, this case turns on whether Defendant denied Plaintiff a reasonable modification. Title II of the ADA requires a public entity to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications

---

[34] The Court does not find Defendant's citation to *Wisconsin Community Services v. City of Milwaukee*, 465 F.3d 737 (7th Cir. 2006), persuasive as that case involved an entirely different set of facts. There, an operator of a mental health clinic sued the city alleging violations of the ADA and Rehabilitation Act in its denial of a zoning permit that would have allowed the clinic to move to a new location. The court analyzed whether the city was required to modify its zoning practices to accommodate the needs of the disabled individuals served by the clinic. *Id*. at 753-54. The Seventh Circuit noted that the clinic sought permission to move to a location where the City sought a commercial, taxpaying tenant, and that the City would have rejected similar proposals from other non-profit entities. *Id*. at 754. In other words, the clinic did not miss out on the opportunity because it served disabled persons, but rather, because of its non-profit status. The Seventh Circuit rejected the contention that Title II's reasonable modification requirement calls for preferential treatment and concluded that the program the clinic sought to modify "does not hurt persons with disabilities by reason of their handicap." *Id*. (quotation omitted).

In the Seventh Circuit case, the clinic needed a waiver of the zoning requirement because it was a non-profit organization, not because it served disabled individuals. Here, Plaintiff needs a modification to Defendant's policy because he cannot gain meaningful access to the benefits provided to him by the WORK program without utilizing his budget allotment for providers holding the requisite skill to satisfy his disability-related needs. His requested modification relates directly to his disability-specific needs.

would fundamentally alter the nature of the service, program, or activity."[35]   When proceeding under the failure to make a reasonable modification theory of discrimination, Plaintiff must show that the public entity "knows that an individual requires [an accommodation], either because that need is obvious or because the individual requests an accommodation."[36]   "Whether an accommodation is reasonable under the ADA is a mixed question of law and fact."[37]   The plaintiff bears the burden of showing that he requested a "reasonable modification," and the Defendant bears the burden to demonstrate that the modification would work a fundamental alteration to the nature of the service, program, or activity.[38]

_____

[35] 28 C.F.R. § 35.130(b)(7)(i).

[36] *Albuquerque Pub. Schs.*, 813 F.3d at 1299 (quotation omitted).

[37] *Punt v. Kelly Servs.*, 862 F.3d 1040, 1050-51 (10th Cir. 2017) (quotation omitted).

[38] The Court has not located decisions from the Tenth Circuit or District of Kansas discussing the parties' respective burdens in a Title II reasonable modification case.  However, courts to consider the parties' respective burdens under Title III, which includes a similar provision, have assigned the parties' burdens in this manner.  The Court considers these cases instructive.  Title III includes within the meaning of discrimination:

> a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.

42 U.S.C. § 12182(b)(2)(A)(ii).  In a Title III case, the Tenth Circuit favorably cited a Fifth Circuit opinion identifying the parties' respective burdens in a Title III reasonable modification context.  *Colo. Cross Disability Coalition v. Hermanson Family Ltd. P'ship I*, 264 F.3d 999 (10th Cir. 2001) (citing *Johnson v. Gambrinus Co./Spoetzl Brewery*, 116 F.3d 1052 (5th Cir. 1997)).  The Tenth Circuit recognized that "several district courts have adopted *Johnson*'s allocation of the burden of proof," and summarized the Fifth Circuit's holding as follows:

> The court held that the plaintiff bears the burden of proving that a modification was requested and that the requested modification was reasonable.  Once the plaintiff meets the burden of showing that an accommodation is reasonable in the general sense, the court held the defendant must make the requested accommodation unless defendant pleads and meets its burden of proving that the requested accommodation would fundamentally alter the nature of the public accommodation.  The plaintiff bears the ultimate burden of proof on the issue of reasonableness, while the defendant bears the burden of proving the requested accommodation would fundamentally alter the nature of the public accommodation.

*Id*. at 1004 (citing *Johnson*, 116 F.3d at 1059) (internal citations omitted).  Further, Courts in other jurisdictions to consider the parties' burdens in the Title II context have assigned the burden of showing that a modification is reasonable to the plaintiff.  *See, e.g.*, *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 76-77 (2d Cir. 2016) (adopting a burden shifting framework whereunder the plaintiff "bears the initial burdens of both production and persuasion as to the existence of an accommodation that is facially reasonable," and if satisfied, "[t]he burden of persuasion then shifts to the defendant to rebut the reasonableness of the proposed accommodation," and holding that

Plaintiff has set forth uncontroverted evidence that due to the nature of his disabilities, in order to gain meaningful access to the WORK program, he must be allowed to utilize higher-skilled workers at an hourly rate higher than contemplated by Defendant's formula. It is uncontroverted that in the past Plaintiff was allowed to pay Kansas Focus a higher hourly rate "because of its expertise in dealing with persons who have the disabilities that [Plaintiff] has, and its ability to accomplish more than unskilled workers in fewer hours." Plaintiff was allowed to do so despite the fact that his budget utilized less than 70% of the assessed PAS hours. Further, it is uncontroverted that as of 2015, Plaintiff's program was working even though it utilized less than 70% of the assessed PAS hours. Given Defendant's disability-specific needs, Plaintiff has identified a reasonable accommodation to Defendant's policies—that Defendant not automatically reject his proposed budgets if the budgets utilize less than 70% of the assessed PAS hours.[39]

While Plaintiff has demonstrated the existence of a reasonable modification, the Court's inquiry does not end. Rather, the Court will deny Plaintiff's motion for summary judgment if Defendant identifies evidence establishing that a genuine issue of material fact exists as to whether the proposed modification is reasonable or whether the proposed modification would work a fundamental alteration to the WORK program. Defendant does not contest the relevant facts alleged by Plaintiff, but instead argues that Plaintiff's claim fails because his requested budget

---

the defendant's "blanket ban on motorized wheelchairs violates the ADA . . . because it precludes [the defendant] from having to make an individualized assessment of [the plaintiff's] particular needs"); *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 507 (4th Cir. 2016) (noting that "plaintiffs must propose a reasonable modification to the challenged public program that will allow them the meaningful access they seek"); *Wong v. Regents of Univ. of Cal.*, 192 F.3d 807, 816 (9th Cir. 1999) (noting the plaintiff bears the "initial burden of producing evidence" that a reasonable accommodation exists).

[39] The Court notes that this does not mean Defendant must approve every proposed budget that does not comply with the 70% utilization policy. Rather, it means that Defendant cannot deny Plaintiff's proposed budgets *because* they do not satisfy the 70% utilization policy.

violates applicable federal Medicaid regulations, and is thus unreasonable, and because his request for skilled services would work a fundamental alteration to the WORK program.

### a. Federal regulations

Defendant represents that the WORK program is a cash and counseling program authorized by 42 U.S.C. § 1396n(j) and implemented through 42 C.F.R. Part 441, Subpart J. Defendant argues that it denied Plaintiff's proposed budget because the budget violated applicable federal Medicaid statutes and regulations, and identifies the following regulations as controlling: 42 C.F.R. §§ 441.464(a)(1), 441.466(b), and 441.470.[40]  A review of Subpart J dispels Defendant's arguments. First, none of the cited regulations dictate the result argued by Defendant. Second, not only does Plaintiff's proposed modification not violate the alleged regulations, but it appears consistent with the language included in Subpart J.

Section 441.464 requires that states assure certain requirements are met with regard to programs like WORK, including the implementation of necessary safeguards. It provides, in relevant part:

A state must assure that the following requirements are met:

(a) Necessary safeguards. Necessary safeguards have been taken to protect the health and welfare of individuals furnished services under the program and to assure the financial accountability for funds expended for self-directed services.

    (1) Safeguards must prevent the premature depletion of the participant directed budget as well as identify potential service delivery problems that might be associated with budget underutilization.

    (2) These safeguards may include the following:

---

[40] Defendant alleges that the "WORK policies stated in the WORK Program Manual are outflows from these controlling federal regulations." While this may be true, the policy Defendant's utilized to deny Plaintiff's proposed budgets—the policy currently before the court—does not appear in the WORK Program Manual; rather, it is an unwritten policy or guideline.

(i)     Requiring a case manager, support broker or other person to monitor the participant's expenditures.

(ii)    Requiring the financial management entity to flag significant budget variances (over and under expenditures) and bring them to the attention of the participant, the participant's representative, if applicable, case manager, or support broker.

(iii)   Allocating the budget on a monthly or quarterly basis.

(iv)    Other appropriate safeguards as determined by the State.

(3) Safeguards must be designed so that budget problems are identified on a timely basis so that corrective action may be taken, if necessary.[41]

This regulation requires the state to adopt safeguards to prevent the premature depletion of a participant's budget, but provides only broad principles to guide the state's implementation of safeguards. Nothing in 42 C.F.R. § 441.464(a)(1) requires Defendant to deny Plaintiff's proposed budget simply because it utilizes less than 70% of the assessed hours, and Defendant identifies no interpretation of this regulation supporting its proposed interpretation. Rather, the regulation simply requires that "significant budget variances" be flagged and brought to the attention of the participant. While the regulation delegates the implementation of the necessary safeguards to the state, it does not require the automatic denial of a budget utilizing less than a certain percentage of assessed PAS hours and it does not exempt the state from compliance with the ADA's reasonable modification requirement.

The next regulation cited by Defendant addresses the assessment of need. Section 441.466 states in full:

States must conduct an assessment of the participant's needs, strengths, and preferences in accordance with the following:

---

[41] 42 C.F.R. § 441.464(a).

(a) States may use one or more processes and techniques to obtain information about an individual, including health condition, personal goals and preferences for the provision of services, functional limitations, age, school, employment, household, and other factors that are relevant to the need for and authorization and provision of services.

(b) Assessment information supports the determination that an individual requires PAS and also supports the development of the service plan and budget.

This regulation, like the prior regulation, does not require denial of Plaintiff's proposed budget if it utilizes less than 70% of the assessed PAS hours. Finally, the third regulation cited by Defendant also does not preclude Plaintiff's proposed modification. Section 441.470 states in full:

A service budget must be developed and approved by the State based on the assessment of need and service plan and must include the following:

(a) The specific dollar amount a participant may utilize for services and supports.

(b) How the participant is informed of the amount of the service budget before the service plan is finalized.

(c) The procedures for how the participant, or participant's representative, if applicable, may adjust the budget, including the following:

(1) How the participant, or participant's representative, if applicable, may freely make changes to the budget.

(2) The circumstances, if any, that may require prior approval before a budget adjustment is made.

(3) The circumstances, if any, that may require a change in the service plan.

(d) The procedure(s) that governs how a person, at the election of the State, may reserve funds to purchase items that increase independence or substitute for human assistance, to the extent that expenditures would otherwise be made for the human assistance, including additional goods, supports, services or supplies.

(e) The procedure(s) that governs how a person may use a discretionary amount, if applicable, to purchase items not otherwise delineated in the budget or reserved for permissible purchases.

(f) How participants, or their representative, if applicable, are afforded the opportunity to request a fair hearing under § 441.300 if a participant's, or participant's representative, if applicable, request for a budget adjustment is denied or the amount of the budget is reduced.

Nothing in any of the federal regulations cited by Defendant required it to reject Plaintiff's proposed budget or refuse to consider his request for a reasonable modification. Thus, while Defendant's unwritten policy may be based on its interpretation of these regulations, it is not mandated by these regulations.

Finally, a review of 42 C.F.R. Part 441, Subpart J, supports Plaintiff's claim that his proposed modification is reasonable. The regulations contemplate a person-centered process and provide participants with a large degree of autonomy, including authority to recruit and hire workers, specify worker qualifications, determine worker duties, and determine the amount paid for a service.[42] A rule requiring automatic denial of a proposed budget without consideration of the individual circumstances present appears in conflict with the person-centered and individualized nature of the relevant regulations.[43]

While flagging a proposed budget that falls below a specified utilization rate may be proper under 42 C.F.R. § 441.464(a)(2)(iii), nothing in the cited regulations authorizes the automatic denial of a budget so flagged. Defendant has identified no statute, regulation, or other

---

[42] *See* 42 C.F.R. § 441.450(b)(5), (6), and (10) (identifying the scope of a self-directed PAS option, and providing participants with decision-making authority over certain items); 42 C.F.R. § 441.468(e)(1), (4)(i), and (5) (stating requirements for an approved service plan and identifying authority belonging to the participant); 42 C.F.R. § 441.478(c) ("Participants, or their representatives, if applicable, retain the right to establish additional staff qualifications based on participants' needs and preferences.").

[43] Further, the WORK Program Manual states that Plaintiff has "the right to a person-centered planning process with all aspects of *WORK*, including the . . . development of the Individualized Budget," that the individualized budget "must be reviewed and approved by the MCO Case Manager before services can begin," and that "[t]he review will include whether the budget includes all of the required elements and meets the needs of the consumer." Doc. 46-8, pp. 28, 37.

authority authorizing or requiring the automatic denial of a proposed budget that utilizes less than 70% of the assessed hours, and nothing in the regulations cited by Defendant creates a genuine issue of material fact as to whether Plaintiff's proposed modification is reasonable. Indeed, a review of the regulations confirms the Court's conclusion that Plaintiff's proposed modification is reasonable.[44]

   b.   Skilled workers as a fundamental alteration to the WORK program

Defendant argues that the modification requested by Plaintiff would require the WORK program to be used to cover skilled workers, when the purpose of the program is to provide unskilled or very limited skilled workers; thus, effectuating a fundamental alteration to the WORK program. Defendant provides neither factual nor legal support for this contention.

First, even if Defendant had properly supported its statement of uncontroverted facts, it fails to include facts relating to this argument. Rather, the summary judgment record is devoid of any facts relating to the purpose or fundamental nature of the WORK program and nothing in the record suggests that the program's intended use covers only "unskilled" services. Indeed, a search of the 52-page WORK Program Manual for the terms "skilled" and "unskilled" returns zero results.[45] Defendant also makes no attempt to explain how a budget that allegedly works a "fundamental alteration" to the program received approval during the prior year's review process. Finally, Defendant has not explained why, if the purpose of the program is to provide unskilled or

---

[44] The Court rejects Defendant's proposed dilemma—that either Plaintiff's assessed need is inaccurate, justifying a denial of his WORK budget, or Plaintiff's budget is being prematurely depleted, justifying a denial of his WORK budget. It is uncontested that Plaintiff seeks services from workers with a higher level of skill and that these workers have an "ability to accomplish more than unskilled workers in fewer hours." Defendant's formula for computing a budget contemplates an hourly rate of $13.25, not an hourly rate at the amount Plaintiff seeks to utilize. Plaintiff's resolution to Defendant's "dilemma" is that a skilled worker will be able to more efficiently serve his needs than an unskilled worker, and thus, satisfy the same "need" in fewer hours.

[45] Also conspicuously missing from the 52-page manual is any reference to the 70% utilization policy.

very limited skilled workers, it approved budgets for other individuals utilizing skilled workers. Plaintiff identifies 14 participants paying an hourly rate between $17 and $25 for various services. If utilizing skilled workers results in a fundamental alteration to the program, Defendant would presumably deny other requests to utilize skilled workers. Defendant has failed to provide any factual support for its claim that approving a budget utilizing less than 70% of the assessed PAS hours works a "fundamental alteration" to the program.[46]

Second, Defendant cites no legal authority for its claim that the WORK program is predicated upon using unskilled workers. The federal regulations cited by Defendant as implementing the cash and counseling programs authorized by 42 U.S.C. § 1396n(j) do not distinguish between skilled and unskilled workers, but rather dictate that individuals receiving benefits will have the authority to specify worker qualifications and determine workers' duties, among other actions.[47] Defendant has not persuaded the Court that a genuine issue of material fact exists as to whether a waiver of the 70% utilization policy would work a fundamental alteration to the WORK program.

### 3. Conclusion

The ADA seeks to eliminate all manners of discrimination against individuals with disabilities. Congress specifically noted that "individuals with disabilities continually encounter various forms of discrimination, including . . . overprotective rules and policies, [and] failure to make modifications to existing facilities and practices."[48] Despite the fact that all of the

---

[46] Plaintiff notes that the WORK Program Manual states that participants "have the flexibility to pay attendants different rates."

[47] 42 C.F.R. §§ 441.450(b), 441.468(e), 441.478(c).

[48] 42 U.S.C. § 12101(5).

professionals who met for Plaintiff's review in 2015 found his program to be working, Defendant denied Plaintiff's proposed budget for failing to comply with the 70% utilization policy and in doing so refused to consider Plaintiff's disability-related needs.[49]  While the 70% utilization policy may have been adopted to prevent the premature depletion of funds, Defendant must be careful not to let a policy meant to protect Plaintiff's best interests result in an overprotection that works against Plaintiff's best interests and has the unintended consequence of discriminating on the basis of disability.

Plaintiff has shown that he was a qualified individual with a disability, that he was denied benefits under Defendant's WORK program, and that he needed a modification to Defendant's unwritten 70% utilization policy in order to have meaningful access to the WORK program benefits.  He requested a modification to the 70% utilization policy and invited Defendant to engage in the interactive process, but Defendant refused to engage in the interactive process. All of the professionals who met for Plaintiff's review in 2015 found his program to be working, and Defendant had previously approved a similar budget even though it did not comply with the 70% utilization policy.  Based on the uncontroverted facts, the Court concludes that Plaintiff's requested modification that Defendant not deny his proposed budget simply because it does not satisfy the 70% utilization policy is reasonable.

Defendant has failed to identify any disputed issue of fact touching on the reasonableness of Plaintiff's proposed accommodation and has failed to demonstrate a fundamental alteration to the WORK program.  Further, Defendant's arguments regarding mootness and that it did not have

---

[49] Defendant asserts that, in considering Plaintiff's 2015 proposed budget Ms. Marney "concluded that she could not support such a substantial reduction in PAS hours given the Plaintiff's medical conditions and need for maintenance drugs."  In other words, Defendant substituted its judgment for that of the professionals involved in reviewing and approving Plaintiff's proposed plan, and did so without considering Plaintiff's disability-related needs.

a duty to provide a reasonable modification lack merit. Accordingly, the Court concludes that based on the undisputed facts, Plaintiff has demonstrated that there is no genuine issue as to any material facts and that he is entitled to judgment as a matter of law on his ADA claim. Accordingly, Plaintiff's Motion for Summary Judgment is granted in part, and Defendant's motion is denied.

**B.      Requested Relief**

Plaintiff seeks three forms of relief: (1) an order directing Defendant not to automatically deny Plaintiff's proposed budgets when they utilize less than 70% of the assessed PAS hours, (2) an order directing Defendant to create a budget based on the actual hours of skilled services Plaintiff requires at the actual rate per hour in the community for those skilled services, and (3) his attorneys' fees, litigation expenses, and costs. As discussed above, the Court concludes that Plaintiff has demonstrated that a reasonable modification of Defendant's policies includes a modification against imposing the bright-line 70% utilization policy in determining whether to approve Plaintiff's proposed budgets. Accordingly, the Court grants Plaintiff's first request. The Court will address Plaintiff's remaining requests below.

*1.      Order to modify the formula for determining the monthly allocation*

Plaintiff's Motion inserts an additional claim for relief not previously included in Plaintiff's First Amended Complaint or in the Pretrial Order. Plaintiff asks the Court for an order directing Defendant to create a budget that utilizes the actual hours for skilled services and the actual rate per hour in the community for those skilled services. In other words, Plaintiff asks the Court to order Defendant to establish a new method for determining the dollar amount of benefits recipients in the WORK program will receive. Defendant opposes any relief that would work "a change in how the program calculates the need for services."

"The pretrial order measures the dimensions of the lawsuit," and "claims, issues, defenses, or theories of damages not included in the pretrial order are waived."[50]  This is true even where the theories appeared in the plaintiff's complaint.[51]  Here, the Pretrial Order does not include the requested relief and does not place Defendant on notice that Plaintiff sought an injunction regarding the method of determining his monthly budget or allocation.  Because Plaintiff has failed to include this request for relief in his Pretrial Order, the Court denies Plaintiff's second request for relief and declines to order Defendant to modify the manner in which it determines Plaintiff's monthly allocation.[52]

### 2.    Request for attorneys' fees, expenses, and costs

"Where a plaintiff prevails in an ADA case, recovery of attorneys' fees, costs, and expenses is permitted."[53]  Defendant provides no response to Plaintiff's request for attorneys' fees, litigation expenses, and costs, and the Court finds an award of such fees and expenses appropriate under the circumstances.  The parties are ordered to confer regarding Plaintiff's request for attorneys' fees, expenses, and costs.  If the parties are unable to reach an agreement as to the

---

[50] *Genesis Health Clubs, Inc. v. LED Solar & Light Co.*, 639 F. App'x 550, 556 (10th Cir. 2016) (quotations and alterations omitted).

[51] *Id.*

[52] Further, although not in the context of a reasonable modification claim, the Tenth Circuit has denied Title II claims seeking a higher budget than what is authorized under state law.  *See generally Cohon*, 646 F.3d 717 (denying Title II claim that state law discriminated against individuals with more severe disabilities and finding that the budget limitations imposed did not amount to discrimination).  Here, Plaintiff admits that under the proposed method of crafting a monthly budget, the budget "may be more or less than his existing budget."  While the Court need not address this argument, it notes that it has concerns regarding whether requiring Defendant to revise its formula for calculating benefits would work a fundamental alteration to the program or otherwise prove unmanageable.

[53] *Marcus v. State of Kan., Dep't of Rev.*, 209 F. Supp. 2d 1179, 1183 (D. Kan. 2002) (citing 42 U.S.C. § 12205).

appropriate award, Plaintiff shall file a motion with this Court identifying, with appropriate support, the reasonable attorneys' fees, expenses, and costs it seeks.[54]

## IV.    Conclusion

No genuine issues of material fact exist as to any of the elements of Plaintiff's ADA reasonable modification claim and Plaintiff is entitled to judgment in his favor. Defendant's arguments in opposition to Plaintiff's Motion for Summary Judgment, as well as in its own Motion for Summary Judgment, either fail to establish a genuine issue of material fact as to any element of Plaintiff's claim or lack merit. Accordingly, the Court grants in part and denies in part Plaintiff's Motion for Summary Judgment and denies Defendant's Motion for Summary Judgment.

The Court grants Plaintiff's request for an injunction preventing Defendant from automatically denying his proposed budgets if they do not comply with the 70% minimum utilization policy. This does not mean that Defendant cannot deny a budget that utilizes less than 70% of the assessed PAS hours. Rather, it simply means that Defendant cannot rely on the policy to deny Plaintiff's proposed budgets, but instead must conduct an individualized assessment to determine whether the proposed budget meets Plaintiff's needs. The Court also grants Plaintiff's request for attorneys' fees, expenses, and costs, and orders the parties to confer regarding the proper amount of attorneys' fees, expenses, and costs. The Court denies Plaintiff's motion to the

---

[54] Plaintiff "bear[s] the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Id.* (citation omitted).

extent it seeks an order directing Defendant to modify its formula for determining Plaintiff's monthly budget.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 37) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 44) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Defendant is enjoined from denying Plaintiff's proposed budgets in the future solely because the proposed budgets utilize less than 70% of the assessed PAS hours.

**IT IS FURTHER ORDERED** that Plaintiff is entitled to his reasonable attorneys' fees, expenses, and costs as authorized under 42 U.S.C. § 12205.

**IT IS FURTHER ORDERED** that the Parties must confer regarding the proper amount of attorneys' fees, expenses, and costs by October 19, 2018. If the Parties are unable to agree to an amount, Plaintiff shall have until November 2, 2018, to file a motion with the Court identifying the reasonable attorneys' fees, expenses, and costs it seeks, with appropriate supporting documentation.

**IT IS SO ORDERED**.

Dated this 21st day of September, 2018.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE